**Ward W. MILLER Plaintiff,**

v.

**Samuel S. CONTE, et al., Defendants.**

**United States of America Plaintiff,**

v.

**Samuel S. Conte, et al., Defendants.**

**No. 1:99–CV–0017, 1:99–CV–149.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 28, 1999.

Kevin P. Jenkins, U.S. Dept. of Justice, Washington, DC, for United States of America, plaintiffs.

James T. Young, Warsco Brogan and Strunk, Fort Wayne, IN, for Samuel S. Conte, Carol S. Conte, defendants.

Peter Conte, Milwaukee, WI, pro se.

Ward W. Miller, Bloom Bloom More and Miller, Fort Wayne, IN, pro se.

Ken Miller, Indiana Department of Revenue, Indianapolis, pro se.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This cause is before the court upon cross-motions for partial summary judgment filed by plaintiff, Ward W. Miller ("Miller") and the United States of America ("United States" or "the Government") filed on September 23, 1999. The Government filed its response to Miller's motion on October 12, 1999. Miller filed no response and notified the court that no reply to the Government's motion would be forthcoming. Accordingly, the motions are ripe for consideration.

For the following reasons, Miller's Motion for Partial Summary Judgment will be DENIED. The Government's Motion for Partial Summary Judgment will be GRANTED.

### RELEVANT STIPULATED FACTS

To facilitate this court's efforts in resolving the pending motions, on August 25, 1999 the parties filed their "Stipulation of Fact Between Miller, Trustee, and the United States for Purposes of Partial Summary Judgment Motions." The following facts are taken from this filing:

Defendant, Samuel S. Conte, ("the Debtor or Conte") controlled the now-defunct entity Import & Mini Car Parts, Ltd. ("Import") before and during the time it was in Chapter 11 bankruptcy. While it was in Chapter 11, the corporation failed to pay the United States the appropriate employment taxes, in addition to various state taxes and other administrative obligations. At all applicable times, Conte has been a resident of Allen County, Indiana, and his wife, Carol Conte, is not a debtor of either plaintiff.

On or about February 19, 1985 ("February 1985 Lien"), the United States duly assessed an unpaid federal trust fund recovery penalty against Conte for the unpaid withholding taxes of Import for the period ending June 30, 1984. On or about August 10, 1987 ("August 1987 Lien"), the United States made an additional assessment for federal trust fund recovery penalties against Conte for unpaid withholding taxes for the period ending December 21, 1985. The United States gave proper notice of the assessment and demand for payment to Conte, but he did not timely satisfy the obligations.

As a result of Conte's tax liabilities, the Internal Revenue Service caused the following tax lien notices, refiling of tax lien notices, or correction to a filed tax lien notice, to be recorded with the recorder of Allen County, Indiana:

| RECORDING DATE | DOCUMENT NO. | AMOUNT |
|---|---|---|
| 5/17/85 | 85–12282 | $28,230.89 |
| 6/07/85 | 85–14363 | $28,230.89 |
| 2/16/88 | 88–005357 | $20,632.37 |
| 2/12/91 | 91–005332 | $28230.89 (re-filing) |
| 2/12/91 | 91–005333 | $28,230.89 (re-filing) |
| 6/30/93 | 93–036613 | $20,632.37 (correction) |

The re-filing of the notices of federal tax liens dated 5/17/85, 6/07/85 and 2/16/88 were timely as required by 26 U.S.C. § 6323(g)(3). At no time did the United States file any notices of tax liens with respect to Conte with the clerk of the United States District Court for the Northern District of Indiana, Fort Wayne Division, or any other federal district court sitting in Indiana.

Miller's Bankruptcy trustee predecessor, Jule S. Walker ("Walker"), the bankruptcy trustee for the Import case, sued Conte for fiduciary defalcations while administering Import's Chapter 11 in adversary case 88–1084 in the United States Bankruptcy Court, Northern District of Indiana, Fort Wayne Division, and he recovered a monetary judgment against Conte on September 6, 1990 (amended September 20, 1990) ("Bankruptcy Court Judgment"). On or about November 29, 1993, the bankruptcy court approved the assignment of the Bankruptcy Court Judgment to Miller. The Bankruptcy Court Judgment was not entered into the judgment docket index of any Indiana circuit or county court. Miller domesticated the Bankruptcy Court Judgment in the Allen County Indiana, Superior Court, with a judgment dated January 6, 1997, in case 02D01–9610–CP–1532 ("Domesticated Judgment"). The Domesticated Judgment was entered into the Allen Circuit Court Judgment Docket Index on January 22, 1997. Miller filed a lis pendens notice on January 15, 1999 four days prior to filing the instant lawsuit.

The United States took no legal action to foreclose its liens as to the tract in question until the April 20, 1999 filing of case 1:99–CV–149, subsequently consolidated with this case.

The real estate which is targeted by both Miller and the United States is a tract in Allen County, Indiana, known as 1705 Buckskin Dr., Fort Wayne, Indiana, which now serves as the primary residence of Conte and his wife Carol Conte. The tract was acquired February 5, 1993, by purchase from Cedar Creek Farms, Inc. in the amount of $75,000. The purchase price was comprised of (1) $4,000.00 earnest money deposit; (2) $5,000.00 financed by the seller taking back a mortgage on the property (subsequently paid and released); and (3) $66,061.38 provided by Conte and his wife at closing. Cedar Creek Farms sold the property for its fair market value and it had no knowledge of Conte's unpaid obligations.

Cedar Creek provided a corporate deed of conveyance at the closing, which was recorded with the Allen County Recorder's office on February 10, 1993, placing title in the tract in question one-half in Peter Conte (an emancipated adult son living out of state), and one-half in Conte and his

wife, which, if valid, would have created a tenancy by the entirety in Indiana. The $4,000.00 earnest money paid to the seller on January 19, 1993, came from a check drawn on a Standard Federal bank account owned by Carol Conte. Individually, Conte has not had a bank account in his own name since the failure of Import.

Columbia Land Title, Co. handled the closing. The $66,061.38 paid to it at the real estate closing was paid in the form of a Standard Federal cashier's check which check was comprised of (1) Peter Conte's check for $8,219.55 and (2) a check for $57,841.43 from Conte's Merrill Lynch account. The funds from the Merrill Lynch account were the proceeds from the sale of the stock Conte inherited from his mother and his father. Conte's mother died testate on September 8, 1992, leaving one-fourth of her net estate to Conte and three-fourths to Conte's siblings. Conte's inheritance was received in the form of marketable securities which he subsequently transmitted to a Merrill Lynch account.

Pursuant to a stipulation filed with court on October 12, 1999, advising it of a partial settlement reached by the remaining parties, Conte agreed to tender $57,841.43 to an escrow account in exchange for a release of the liens held by Miller and the IRS against his real estate. Under the terms of the stipulation, these funds are to remain in escrow until further order of this Court determining the entitlement of the parties to portions of or all of these funds.

### APPLICABLE STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(c) mandates the entry of summary judgment, after ade-

quate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). These traditional notions apply equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 774 (7th Cir.1996). Thus, when cross-motions for summary judgment are filed, the "[c]ourt must take a dual perspective: [e]ach movant has the burden of establishing the absence of any genuine issue of material fact on its own motion." *ITT Industrial Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987).

The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512, 106 S.Ct. 2505; *North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.,* 89 F.3d 452, 455 (7th Cir.1996); *In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the

governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First Nat'l Bank of Cicero v. Lewco Sec. Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

### DISCUSSION

Miller filed the instant suit seeking to set aside an alleged fraudulent conveyance of real estate from Conte, and to foreclose thereon the judgment liens held by him and a local law firm [1], and the tax liens of the State of Indiana [2] and the United States.[3] Conte, the United States and Miller are the sole parties remaining in this action, the other parties having been either dismissed from the case or the subject of a default. As a result, the sole issue before the court in the remaining parties' cross-motions for summary judgment is one of lien priority, or stated another way, does the United States' tax liens take priority over Miller's judgment lien? Not surprisingly, the United States argues it has priority and Miller argues to the contrary.

Miller's argument is two fold. First, Miller maintains that the August 1987 Lien [4] was improperly "perfected" because the notice of tax lien was filed in the wrong location. Under this theory, since the August 1987 tax lien was not properly perfected as against subsequent third party lien creditors, Miller urges that his judgment lien is superior. Second, Miller contends that even if the August 1987 Lien is properly perfected, the lien did not attach to any property owned by Conte and thus, is invalid as to the subject real property.

In response, the United States admits that the August 1987 Lien was improperly perfected, but advances the argument that it cured the defective filing prior to Miller's perfection of his judgment lien. As for the contention that the August 1987 Lien did not attach to either Conte's inheritance or the later-purchased realty, the United States reasons that tax liens attach to all property whether owned by the taxpayer presently or after-acquired and, in addition, follow any property substituted for property previously subject to a lien. In this case, the United States argues that the tax lien attached to Conte's 1992 inheritance and remained attached to any property Conte later substituted for it, including the subject real estate.

Mindful that to resolve the issue this court must enter "the tortured meanderings of federal tax lien law," *Texas Oil & Gas Corp. v. United States,* 466 F.2d 1040,

1. As part of his lawsuit, Miller contended that the law firm, Warsco, Brogan & Strunk, held a judgment lien against Conte and thus, included it in the instant lawsuit to permit it to foreclose on that lien. Warsco, Brogan & Strunk filed its Answer declaring that the judgment it had obtained had been satisfied and attached to its Answer a "Release of Judgment" indicating that the judgment was satisfied. Thereafter, this court approved a "Stipulation for Dismissal of Warsco & Brogan Without Prejudice."

2. On May 27, 1999, the court entered a default against Defendant, the State of Indiana.

3. The United States filed a separate action in this court docketed as 99–CV–149. The court granted Miller's motion to consolidate the two cases on July 27, 1999.

4. In the opening paragraphs of his brief in support of his motion for partial summary judgment, Miller concedes that the February 1985 Lien has priority over his judgment lien. (Miller's Memorandum in Support, p. 1: "The 1985 federal tax lien notice was correctly filed and refiled, meaning its paramountcy over this judgment creditor."). Thus, the sole issue before the court is the priority dispute between the August 1987 Lien and Miller's judgment lien.

1043 (5th Cir.1972), the court proceeds with caution in examining the parties' respective positions.

Section 6321 of the Internal Revenue Code creates a statutory lien against all property and rights to property belonging to a delinquent taxpayer. 26 U.S.C. § 6321. The lien arises at the time of assessment[5] and attaches to all after-acquired property, 26 U.S.C. § 6322; *United States v. McDermott*, 507 U.S. 447, 452–55, 113 S.Ct. 1526, 1529–31, 123 L.Ed.2d 128, (1993); *Glass City Bank of Jeanette v. United States*, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); but is valid against a "judgment lien creditor" only after the IRS files the appropriate notice, see 26 U.S.C. § 6323(a), (f). The federal rule is first in time, first in right: a properly filed federal tax lien has priority over a competing state-created lien unless the competing lien has "attached" to the property in question and is "choate" prior to the perfection of the federal tax lien. *See United States v. City of New Britain*, 347 U.S. 81, 86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *United States v. Security Trust & Sav. Bank of San Diego*, 340 U.S. 47, 51, 71 S.Ct. 111, 113–14, 95 L.Ed. 53 (1950). A lien that is "choate" has been described as a lien that is "specific and perfected" and for which "nothing more [need] be done." *United States v. Equitable Life Assurance Society*, 384 U.S. 323, 327–28, 86 S.Ct. 1561, 1563–64, 16 L.Ed.2d 593 (1966) (citation omitted).

In the present case, Miller contends that he is first in time and thus, should be first in right to the funds held in the escrow account. Because the issue presented is one of priorities, it is helpful, before traversing any farther, to set forth the significant dates pertinent to the analysis. On February 16, 1988, the United States filed its notice of tax lien for the August 1987 Lien in the Allen County Recorder's Office. On June 30, 1993 the United States filed, again in the Allen County Recorder's Office, a "correction" relating to the August 1987 Lien.

The starting point for this court's analysis begins with 26 U.S.C. § 6323(a) which provides the backbone for this court's review. Under that provision, a federal tax lien is "not valid against any ... judgment lien creditor ... until notice thereof which meets the requirements of subsection(f) have been filed by the Secretary." With respect to both real and personal property, the notice requirement under the statute requires proper filing of the tax lien in one office designated by the state "in which the property subject to the lien is situated." 26 U.S.C. § 6323(f)(1)(A)(i) and (ii). In the event that a state fails to designate one office for such filings, the default filing location is with the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated. 26 U.S.C. § 6323(f)(1)(B).

The source of Miller's contention is with the initial February 16, 1988 filing relating to the August 1987 Lien which he argues should have been made with the clerk of this court rather than with the county recorder. As part of his argument, Miller points to a series of changes within the Indiana statutes which, through some odd legislative occurrences, changed the situs for filing notices of tax liens. As Miller points out until July 1, 1987, Indiana's statute authorized the filing of notice of federal tax liens against either real or personal property in the office of the appropriate county recorder in Indiana. *See* former Ind.Code § 36–2–11–21(a) (repealed P.L. 338–1987). On July 1, 1987, however, the Indiana legislature reworked this statute and provided that to perfect a "federal lien on *real property* ... notice of the lien must be filed in the office of the recorder of the county in which the real

---

**5.** "It is quite possible that a financially troubled taxpayer ... will not know whether or when a tax lien has been imposed upon all his property because.... [the lien] arises automatically on the occurrence of certain events and without express notification to the taxpayer." William T. Plumb, Jr., Federal Tax Liens S 2 at 10 (3d ed.1981).

property subject to the lien is located." Ind.Code § 36–2–11–25, P.L. 338–1987. By its very terms, this statutory revision failed to set forth one state office for filing notices of tax liens on personal property. Thus, as Miller again points out, the appropriate place to file a tax lien relating to personal property after July 1, 1987 is the clerk of the district court in the district where the personal property is located. Accordingly, Miller argues that the United States failed to properly perfect the August 1987 Lien as to Conte's personal property in its initial filing in 1988.

The United States, in its response, acknowledges that the August 1987 Lien was improperly filed in the recorder's office but argues that it cured this improper filing through its corrected filing in June 1993, after the Indiana legislature amended the statute for the third time. Indeed, on April 27, 1993, the Indiana legislature, having perceived its error in removing personal property from the statutory language, revised the statute once again. The statute now reads:

> This section applies to:
>
> . . .
>
> (2) any other federal lien on real property or any federal tax lien on personal property provided for in the statutes or regulations of the United States.
>
> In order for a lien covered by this section to be perfected, notice of the lien must be filed in the office of the recorder of the county in which the real or personal property subject to the lien is located.

Ind.Code § 36–2–11–25. As a result, the United States insists that since it cured the defective filing after the effective date of this revised statute, it remains first in time; the "time," of course, running from the corrected June 1993 filing. This court agrees and, in his brief, Miller apparently does as well since he concedes that the June 1993 corrected filing was timely and filed in the appropriate location. (Miller's Memorandum in Support, p. 7: "While this re-filing was timely and in the proper place . . .").

■ Despite this concession, Miller argues that the 1993 filing is not enforceable against the subject parcel of real estate since the lien did not attach to any property of Conte before Conte transferred ownership of the real estate on February 5, 1993, creating a tenancy by the entireties. Phrased differently, Miller maintains that because the corrected filing occurred after February 1993 when Conte transferred the subject property to create an entireties estate, Conte had no property to which a tax lien could attach. As part of this theory, Miller argues that under Indiana law a tenancy by the entireties creates no individual right in one spouse, *see Matter of Paeplow*, 972 F.2d 730, 733 (7th Cir. 1992), and thus Conte, by virtue of transferring ownership, retained no property to which the tax liens could attach.[6]

■ Miller is correct in his assertion that under Indiana law a federal tax lien against one spouse could not attach to property held by that spouse as an entireties estate, since, under Indiana law which governs the nature of a spouses' legal interest, a single spouse does not have a separate interest in an entireties estate. The problem Miller has difficulty overcoming, however, is the fact that a tax lien

---

6. It is well-settled that in federal taxation cases, the definition of underlying property interests is left to state law, but the consequences that attach to those interests are determined by reference to federal law. See *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Thus, the court looks to state law to determine the character of any prop-

erty right Conte may have had, but federal law determines whether or not, and at what point in time, a tax lien may attach to that property interest. See, e.g., *United States v. Bess*, 357 U.S. 51, 55–57, 78 S.Ct. 1054, 1057–58, 2 L.Ed.2d 1135 (1958)("[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative.").

"attaches" at the time of assessment to all property a debtor owns presently or acquires thereafter. Here, the 1987 tax lien clearly attached, as of the date of assessment in August 1987, to Conte's inheritance in 1992. "That the Government might not file notice [pursuant to 26 U.S.C. § 6323] until some future date, if at all, does not affect the immediate attachment of a tax lien when liability is admitted or assessed. Seemingly unencumbered property may therefore in fact be subject to a 'secret' tax lien, which remains undisclosed until the Government files notice." *Sgro v. United States,* 609 F.2d 1259, 1261 (7th Cir.1979); *see also Don King Productions v. Thomas,* 945 F.2d 529, 533 (2d Cir.1991) ("A federal tax lien, described as a 'secret lien,' is effective upon assessment against all persons, even in the absence of recordation of the lien."); *Rice Investment Co. v. United States,* 625 F.2d 565, 568 (5th Cir. 1980). This is precisely what occurred here.

The United States assessed the tax liability in question against Conte on August 10, 1987, thereby creating the August 1987 Lien. At that point, all property Conte owned or thereafter acquired was subject to the lien until the tax liability was satisfied, regardless of when the government filed its notice of tax liens. In other words, the tax lien "attached" to all of the taxpayer's property even if the government failed to file proper notice of the tax liens. Thus, in 1992, when Conte received the stock inheritance, he received it subject to a tax lien, i.e., the lien "attached" to the inheritance. Moreover, Conte's conversion of the property from stock to cash and his subsequent transfer of the property into a tenancy by the entirety does not disturb the lien's attachment because "it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere. . . ." *United States v. Davenport,* 106 F.3d 1333, 1335 (7th Cir.1997) *(* quoting *United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958); *see also Municipal Trust and Savings Bank v. United States,* 114 F.3d 99, 101 (7th Cir.1997))

("[I]t was established long ago that the lien follows any property substituted for what the taxpayer owned, provided that the chain of substitution can be traced."). As a result, when the United States filed its notice of tax lien in June 1993, it not only succeeded in perfecting its interest under § 6323 against subsequent lien creditors but also had a lien which had attached to identifiable property, i.e., the residence purchased with Conte's inheritance. What Miller questions, and thus, the thrust of this case is whether his status of a judgment lien creditor alters this conclusion.

Miller contends he is a "judgment lien creditor" by virtue of the 1990 judgment in the Bankruptcy Court and the later Domesticated judgment. If Miller were a "judgment lien creditor," and his status as such was acquired prior to June 30, 1993, when the United States recorded its federal tax liens, Miller would be entitled to priority over the government. At the risk of redundancy, this is so because § 6323(a) provides a measure of protection against "secret liens" for purchasers, holders of security interests, mechanics lienors, and judgment lien creditors if their interest attaches before the Government files appropriate notice. Thus, while a lien attaches to a taxpayer's property at the time of assessment, the lien is not enforceable against judgment lien creditors of the taxpayer until the United States files notice as set forth in the statutory scheme. If the United States fails to promptly file its notice, intervening judgment lien creditors prevail over the tax lien.

■ A "judgment lien creditor," undefined by federal statute, is described in treasury regulations as "a person who has obtained a valid judgment . . . for the recovery of . . . a certain sum of money. . . . [and as] a person who has perfected a lien under the judgment on the property involved." 26 C.F.R. § 301.6323(h)–1(g). "In determining . . . whether a judgment creditor's lien is perfected . . ., we look first to the local law setting forth the lien

procedure and its legal consequences." *United States v. Bess*, 357 U.S. 51, 55–56, 78 S.Ct. 1054, 1057–58, 2 L.Ed.2d 1135 (1958); *Hartford Provision Co. v. United States*, 579 F.2d 7, 9 (2d Cir.1978); *Waste Management of Missouri, Inc. v. Evert*, 188 F.3d 1002 (8th Cir.1999) ("...state law governs what constitutes a perfected lien."); *United States v. Dishman Independent Oil, Inc.*, 46 F.3d 523, 526 (6th Cir.1995) ("... the task of determining what constitutes a perfected lien is usually governed by state law.").

Under Indiana law, a judgment lien relating to real property is not "perfected" against third parties until it is entered and indexed in the judgment docket. Ind.Code § 34–55–9–2; Treas.Reg. § 301.6323(h)–1(g). Through their stipulated filing the parties agree that Miller's judgment was entered into the Circuit Court Judgment Docket on January 22, 1997. Thus, Miller's judgment was perfected on January 22, 1997.[7] As a result, it is clear that Miller's interest did not attach to any interest of Conte prior to 1993 when the United States validly perfected its tax lien, and, more importantly it never attached to Conte's inheritance in 1992. At best, Miller attached and perfected his judgment lien on January 22, 1997, well after the United States provided notice of its tax lien on Conte's property. For this reason, the August 1987 Lien is "first in time" and prevails over Miller's subsequent judgment lien.

### CONCLUSION

Based on the foregoing, both the February 1985 Lien and the August 1987 Lien have priority over Miller's judgment lien. Miller's Motion for Partial Summary Judgment is hereby DENIED and the United States' Motion for Partial Summary Judgment is hereby GRANTED. Having resolved the lien priority issue, all that remains of this case is a final determination as to the amounts due and owing to the parties and payment of such funds to the parties from the escrow account.

---

7. In his brief, Miller argues that his lis pendens notice, filed on January 15, 1999, perfected his judgment lien against Conte's real property and thus, this is the relevant date for purposes of his claim of priority not January 22, 1997, the date conceded by the United States. Given this court's resolution of the priorities issue it matters little which date the court utilizes, but, for purposes of this opinion and without making any specific findings, the court shall utilize the earliest of the two dates.