COOPER INDUSTRIES, INC., Plaintiff,

v.

Jacqueline M. COMPAGNONI, and United States of America, Defendants.

No. Civ.A. H–00–0702.

United States District Court, S.D. Texas, Houston Division.

Aug. 29, 2001.

Marsha L. Montgomery, Houston, Texas, James Frederick Allen, Houston, Texas, for plaintiff.

Robert Ader, Miami, Florida, Michael D. Powell, Dallas, Texas, for defendant.

## ORDER

GILMORE, District Judge.

Pending before the Court is Defendant United States of America's Motion for Summary Judgment (**Instrument No.20**). Based on the submissions of the parties and the applicable law, the Court finds that the motion should be **DENIED** and that Defendant Jacqueline Compagnoni is entitled to summary judgment. Plaintiff Cooper Industries is **ORDERED** to file an application for attorney's fees within ten days of the date of this Order.

### I.

This interpleader action arises from a lien interest taken by the United States Internal Revenue Service ("IRS") in the

net accrued benefits of Luciano Compagnoni's pension and savings plan under his former employer, Plaintiff/Stakeholder Cooper Industries, Inc. ("Cooper"). Defendant/Claimant Jacqueline Compagnoni, Luciano's former spouse, was awarded the full amount of these benefits as part of a Qualified Domestic Relations Order issued in Dade County, Florida during their divorce proceedings in 1993. Compagnoni contends that her right to these funds is without restriction. The IRS is attempting to apply the proceeds from Luciano Compagnoni's benefits toward his assessed income tax deficiency for the 1987 year. Plaintiff has deposited the disputed pension plan benefits, $62,583 .58, in the Court's registry and has interpled both Jacqueline Compagnoni and the United States pursuant to 28 U.S.C. § 1335, seeking declaratory relief in determining which party's claim to the accrued benefits is superior. Cooper does not claim any interest in the funds, but requests its attorney's fees and costs. (Instrument Nos. 1, 30).

Luciano Compagnoni worked for Cooper from 1975 until 1991 and participated in the Salaried Employees' Retirement Plan ("Salaried Plan") and the Savings and Ownership Plan. This case concerns the proceeds from the Salaried Plan. Luciano and Jacqueline Compagnoni were married from 1975 to 1980, and were then remarried on December 28, 1987. In 1990, Jacqueline Compagnoni filed for divorce in the Circuit Court for the 11th Judicial Circuit, Dade County, Florida.

In April 1991, Luciano Compagnoni received a refund check for the 1988 tax year from the United States Treasury made out to Luciano and Jacqueline Compagnoni for $73,324.07. (Order and Final Judgment on Mandate, Instrument No. 45, Exh 1 at 3). The refund was the result of the IRS's erroneous application of a check in the amount of $84,850.00 toward the Compagnoni's 1988 taxes. *Compagnoni v. United States*, No. 94–0813, 1996 WL 636110, at *1 (S.D.Fla. Aug. 30, 1996). The check should have been applied toward their existing 1987 tax liability. *Id.* Luciano Compagnoni cashed the check in Venezuela without Jacqueline Compagnoni's consent and the money was never recovered. (Instrument No. 45, Exh 1 at 3).

A final judgment of dissolution of marriage was entered on April 18, 1991. As part of that judgment, Compagnoni was awarded 50% of her husband's pension benefits and counsel was ordered to submit a qualified domestic relations order ("QDRO") to effect the transfer. (Instrument No. 20, Exh 2 ¶ 11). Jacqueline Compagnoni appealed the final judgment, which was reversed by the appellate court on December 31, 1991 and remanded with instructions to redistribute the assets of the parties based upon their ten years of marriage rather than a two and one-half year marriage. (Instrument No. 45, Exh 1 at 1).

On October 22, 1992, the IRS assessed $61,173.00 in additional income taxes and 46,523.59 in interest against Luciano Compagnoni for the 1986 tax year. The IRS filed a notice of federal tax lien in Miami for this additional assessment on November 13, 1992. On March 8, 1993, additional income taxes of $59,798.00 and $38,181.09 in interest were assessed against the Compagnonis for 1987.

After the case was remanded, the Dade County court entered its order and final judgment distributing the assets on April 8, 1993. (Instrument No. 45, Exh 1). The order was also recorded on that date. (*Id.*). The order directed counsel to prepare a QDRO to be entered that would award Jacqueline Compagnoni the "total value of the Cooper Industries pension account and savings plan," (Instrument No. 45, Exh 1

at 8). Mr. Compagnoni's attorney sent the IRS a copy of the April 8 order by letter dated April 19, 1993. (Instrument No. 45, Exh 4). An order was entered on April 16, 1993, granting Jacqueline Compagnoni the entire interest in Luciano Compagnoni's Salaried Plan pension benefits which was $56,331.53, and the Savings and Ownership Plan, which was $220,381.05, and giving Cooper the responsibility for deciding whether the domestic relations order ("DRO") was qualified. (Instrument No. 1, Exh J). Cooper made a "tentative determination" "pending receipt of additional information" that the DRO was deficient. (Instrument No. 20, Exh 6). Cooper faulted the DRO for neglecting to clearly identify the Savings and Stock Ownership Plan in the language of the order and for designating a beneficiary for the Salaried Plan despite the fact that it did not permit Jacqueline Compagnoni to do so. (*Id.*). Cooper informed Jacqueline Compagnoni's attorney that, "[o]nce the order or clarification is received, the Revised Domestic Relations Order will be reviewed once more pursuant to [Cooper's] QDRO Administrative Procedures in order to determine its qualified status. You will then be notified of its qualified or unqualified status." (*Id.*).

On May 10, 1993, the IRS assessed Luciano Compagnoni $18,051.47 in income taxes for 1991. On May 21, 1993, the IRS filed a notice of federal tax lien with respect to the Compagnonis' tax liability for 1987. (Instrument No. 45, Exh 5). The IRS then served a notice of levy upon the Plan Administrator at Cooper with respect to the additional assessment against the Compagnonis for 1987 as well as a notice of levy for Luciano Compagnoni's liability for 1991. On July 1, 1993, the IRS served a notice of levy upon Citibank as trustee of the Savings and Ownership Plan, with respect to Luciano Compagnoni's liability for 1987. Citibank is not a party to this action. A similar notice of levy was served upon Citibank for the years 1986 and 1991. While the IRS attempted to serve a levy for the benefits at issue here, it was apparently unsuccessful. (Instrument No. 45, Exh 7).

On July 20, 1993, the Dade County court issued an order clarifying its previous order with respect to the benefits. ("Order Clarifying Qualified Domestic Relations Order Dated April 16, 1993," Instrument No. 45, Exh 3). Cooper determined that the order, as clarified, was a QDRO. (Instrument No. 20, Exh 9). On July 29, 1993, Citibank issued a $183,290.88 check to the IRS. The IRS applied those proceeds from the Savings and Ownership Plan to pay Luciano Compagnoni's income tax liability for 1986 and 1991 in full. (Instrument No. 20, Exh 10). For 1987, $47,794.61 was applied toward his liability. (*Id.*).[1] Apparently, the IRS arbitrarily chose to apply the money from the levied Citibank benefits toward the 1991 liability rather than using all the remaining proceeds to reduce the 1987 liability.

In September 1993, the IRS released Jacqueline Compagnoni from liability for the additional assessments and interest for the year 1987. (Instrument No. 20, Exh 12). Pursuant to the innocent spouse pro-

---

1. In 1994, Jacqueline Compagnoni filed an action against the United States in the Southern District of Florida pursuant to 26 U.S.C. § 7426, challenging the levies filed with respect to the Savings and Ownership Plan, claiming that the property was not her husband's at the time the levies were filed, but instead was hers pursuant to the orders of the Dade County Circuit Court issued during the divorce proceedings. The court did not reach the merits of the case but dismissed it for lack of subject matter jurisdiction, finding that the United States was protected by sovereign immunity. *Compagnoni v. United States*, No. 94–0813, 1996 WL 636110, at *4 n. 3 (S.D.Fla. Aug. 30, 1996).

visions of the Revenue Code, the IRS filed a modified notice of federal tax lien that removed her name from the lien. (*Id.*).

On February 29, 2000, Cooper filed this action seeking a declaratory judgment as to which of the claimants, Jacqueline Compagnoni or the Government, is entitled to the funds at issue as well as attorney fees and costs. The United States filed a motion for summary judgment on September 15, 2000, arguing that pursuant to 26 U.S.C. §§ 6321, 6322, its lien against Compagnoni's pension benefits attached as of the time the tax was assessed, March 8, 1993. The United States asserts that because the division of the Compagnonis' assets was not final until the Final Judgment on Mandate after Remand was issued on April 8, 1993 and the QDRO had not been entered as of the date of the assessment, the IRS is entitled to the funds as a prior lien holder. The United States contends that the final judgment did not make Jacqueline Compagnoni a "judgment lien creditor" entitled to priority over the tax lien. Even if it did, the Government continues, it was not effective until the QDRO was entered on July 30, 1993, which was after the IRS filed a notice of federal tax lien.

Jacqueline Compagnoni filed a response on October 10, 2000, claiming that the final judgment in the divorce dated April 8, 1993 entitles her to her former spouse's pension benefits. (Instrument No. 28). A hearing was held on June 22, 2001 to clarify factual and legal issues for the Court. The parties filed supplemental briefing related to priority. The Government argues that Compagnoni failed to perfect her interest in the pension benefits and, as a result, the IRS is entitled to priority. (Instrument No. 46). Compagnoni argues that the recording of the final judgment was sufficient to perfect her interest. (Instrument No. 45). Compagnoni also requests that the Court grant her summary judgment *sua sponte*.

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also United States v. Arron*, 954 F.2d 249, 251 (5th Cir.1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson*, 106 S.Ct. at 2510. If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 2511; *see also Thomas v. Barton Lodge, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues." *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990).

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and for identifying those portions of the record that demonstrate such absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir.1999).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must

do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *See Matsushita,* 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir.1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson,* 106 S.Ct. at 2514; *see also Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue....."). The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *See Anderson,* 106 S.Ct. at 2512.

## III.

The question of whether the IRS or Jacqueline Compagnoni is entitled to the proceeds from Luciano Compagnoni's pension benefits ultimately depends on which party had the priority interest based on the applicable tax and employee benefits laws. To resolve the issue, this Court must enter "the tortured meanderings of federal tax lien law," *Tex. Oil & Gas Corp. v. United States,* 466 F.2d 1040, 1043 (5th Cir.1972), and address the interplay of Employee Retirement Income Security Act ("ERISA") with state execution of judgment law. The IRS contends that its lien filed on May 21, 1993 takes priority over Ms. Compagnoni's QDRO because she was not a judgment creditor with a perfected interest in the pension benefits. The IRS asserts that Compagnoni was not a judgment creditor until July 20, 1993 when the final QDRO was issued. Compagnoni argues that the April 8, 1993 entry and recording of the Dade County court order rendered her a judgment lien creditor with an interest superior to that of the IRS. The parties do not dispute the facts of the case but disagree as to the legal import of these facts.

■ The United States is entitled to impose a lien upon a person's real or personal property if that person fails to pay any tax owed the IRS. 26 U.S.C. § 6321. The benefits at issue are governed by ERISA. While ERISA's anti-alienation clause prevents ordinary creditors from attaching pension funds, a federal tax lien or levy may be imposed upon ERISA-qualified pension plan funds such as those here. *See Shanbaum v. United States,* 32 F.3d 180, 183 (5th Cir.1994). The lien arises "at the time the assessment is made." 26 U.S.C. § 6322; *see also Harris v. United States,* 764 F.2d 1126, 1128 (5th Cir.1985). However, such a lien is not valid against several classes of creditors, including a "judgment lien creditor," until notice of the federal tax lien has been filed. 26 U.S.C. § 6323(a), (f). The relative priority of a federal tax lien is a matter of federal law. *United States v. Acri,* 348 U.S. 211, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955). Priorities may turn, however, on questions of state law such as whether property existed to which a lien might attach. *S. Rock, Inc. v. B & B Auto Supply,* 711 F.2d 683, 685 (5th Cir.1983).

■ The priority of federal tax liens is generally determined by the common law rule of "first in time, first in right." *United States v. New Britain,* 347 U.S. 81, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). To the

extent that § 6323(a) is applicable, it modifies the rule to require the IRS to have filed a notice of federal tax lien "first in time" to be "first in right" over a judgment lien creditor. *See* 26 U.S.C. § 6323(a), (f).

As described in the Treasury Regulations, a "judgment lien creditor" is a "person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money." [2]  26 C.F.R. § 301.6323(h)–1(g); [3] *Palandjoglou v. United Nat'l Ins. Co.*, 821 F.Supp. 1179, 1184 (S.D.Tex.1993). Where the judgment is for the recovery of a certain sum of money, a judgment lien creditor must have perfected the lien under the judgment on the property involved. *Id.* If levy or seizure is required under state law before a judgment lien becomes effective against third parties acquiring liens on personal property, then levy or seizure is necessary for perfection. 26 C.F.R § 301.6323(h)–1(g). Perfection requires compliance with the doctrine of choateness: the identity of the lienor, the property subject to the lien, and the amount of the lien must be established. *See Palandjoglou*, 821 F.Supp. at 1184. A lien that is "choate" has been described as a lien that is "specific and perfected" and for which "nothing more [need] be done." *United*

*States v. Equitable Life Assurance Soc'y*, 384 U.S. 323, 86 S.Ct. 1561, 1563–1564, 16 L.Ed.2d 593 (1966) (citation omitted). According to the Fifth Circuit, for a nonfederal lien to be considered choate, "the identity of the lienor, the property subject to the lien and the amount of the lien must be established beyond any possibility of change or dispute." *Rice Inv. Co. v. United States*, 625 F.2d 565, 568 (5th Cir.1980).

■ The IRS seems to suggest that because tax liens arise at the time of assessment, Compagnoni would have had to be a judgment lien creditor *before* the IRS made its assessment for the 1987 taxes or else she would take the pension benefits subject to the tax lien. This argument does not track the superpriority language of § 6323, which provides that "[t]he lien ... shall not be valid as against any ... judgment creditor until notice thereof ... has been filed." 26 U.S.C. § 6323(a). For purposes of priority, section 6323(a) has the effect of shifting the focus from the point in time when the lien arose to when the IRS filed notice. *See United States v. McDermott*, 507 U.S. 447, 113 S.Ct. 1526, 1530, 123 L.Ed.2d 128 (1993) ("under the language of § 6323(a) ... the filing of notice renders the federal tax lien extant for 'first in time' priority purposes regard-

---

**2.** It is not clear whether the award of the pension benefits would qualify as an award "for the recovery of specifically designated property" or as an award "for a certain sum of money." The Dade County Circuit Court awarded Ms. Compagnoni $383,745.50 and distributed the marital assets to effectuate that award. (Instrument No. 45, Exh 1 at 4, 7–8). As part of the equitable distribution, the court awarded Compagnoni "the total value of the Cooper Industries pension account plan" and listed the amount of the award. (Instrument No. 45, Exh 1 at 7–8).

**3.** The Regulation provides:
"The term 'judgment lien creditor' means a person who has obtained a valid judgment, in

a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established ... If under local law levy or seizure is necessary before a judgment becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved ..."

less of whether it has yet attached to identifiable property"). The Government relies on *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) for the proposition that Compagnoni took the benefits subject to the IRS lien. The case is inapposite as it dealt with insurance benefits that passed, subject to a tax lien, to a spouse at the beneficiary's death. *Id.* The spouse in *Bess* was not a potential judgment creditor as here. The IRS also argues that Compagnoni is not entitled to priority because she did not perfect her interest in the benefits as required by state law. Compagnoni contends that her lien was choate as of the time of the recording of the final judgment.

As of April 8, 1993, the date of the final judgment of the Dade County court, the identity of the lienor, the property subject to the lien and the amount of the lien were fixed and that the judgment was recorded. The first DRO was issued on April 16, 1993. This all transpired before the IRS filed its notice of lien on May 21, 1993. While the QDRO in its final form was not issued until July 20, 1993, after the IRS's notice of lien was filed, Compagnoni's interest was conveyed as of the first DRO on April 16, 1993. This is because the July order simply clarified the earlier DRO. The IRS maintains that neither the issuance of the final judgment nor the QDRO was sufficient to perfect Compagnoni's interest in the benefits at issue because the Treasury Regulations required her to undertake execution as required by state law.

The Treasury Regulations specify that for personal property, a potential judgment creditor must place a levy on the property or seize it *"if such action is required under state law to perfect the lien."* 26 C.F.R. § 301.6323(h)–1(g) (emphasis supplied). It is not immediately apparent that such further action would be required here. Some courts have required perfection under state law for liens involving specifically designated property, though these courts were not confronted with judgments involving ERISA-regulated pension benefits. *See Miller v. Conte,* 72 F.Supp.2d 952, 960 (N.D.Ind.1999) (requiring that judgment lien be recorded in case of real property where state law so required); *Smith Barney, Harris Upham & Co. v. Connolly,* 887 F.Supp. 337, 344 (D.Mass.1994) (same). *See also Palandjoglou,* 821 F.Supp. at 1185 ("In order to perfect a judgment lien in Texas on personal property [to satisfy a money judgment], a form of execution such as garnishment is required") (internal quotation and citation omitted). In Florida, a lien on personal property is not perfected until a writ of execution is delivered to the sheriff of the county in which the property is located. *Interstate Funding Corp. v. Direct Link Cable, Inc.,* 826 F.Supp. 437, 439 (S.D.Fla.1993). Ms. Compagnoni asserts that she did not have to do anything further after recording of the final judgment to perfect her interest in the benefits. The IRS argues that Compagnoni failed to execute on the judgment and that as a result, its interest in the pension benefits is superior to hers.

This analysis completely ignores the fact that the property at issue is not stock shares or real property, but intangible pension benefits regulated by ERISA, which has its own procedure for transferring ownership to a spouse. Given the mechanism provided by ERISA and the clear Congressional intent that ERISA pension benefits not be alienated except under specific circumstances, the Court is not convinced that further measures that are prescribed by state law would be required to perfect the lien. There is no case law addressing whether ERISA would preempt any additional, state law-based requirements for perfecting a judg-

ment involving pension benefits. This issue was not addressed by the parties. The Court believes this analysis is necessary to determine whether Compagnoni or the IRS has the priority interest in the benefits.

## IV.

The primary purpose of ERISA is to protect plan beneficiaries. *See, e.g.,* §§ 1001(b), (c), 1103(c)(1), 1104(a)(1), 1108(a)(2), 1132(a)(1)(B). A nonparticipant spouse may be conferred beneficiary status if a "qualified domestic relations order" awards the spouse an interest in the beneficiary's plan. 29 U.S.C. § 1056(d)(3)(A); *Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 1757, 138 L.Ed.2d 45 (1997). A QDRO is a limited exception to the pension plan anti-alienation provision and allows a court to recognize a non-participant spouse's community property interest in a pension plan. *Boggs,* 117 S.Ct. at 1759. ERISA sets forth the procedures for a plan administrator to follow to determine whether or not a domestic relations order is qualified. 29 U.S.C. § 1056(d)(3)(A)–(H). Whether Treasury Regulations can institute additional state law perfection requirements above and beyond the ERISA QDRO procedure turns on whether such requirements would be preempted by ERISA.

ERISA supersedes state laws that "relate to" employee benefit plans covered by the statute. 29 U.S.C. § 1144(a). Interpreting the "relate to" language is a difficult proposition. "[A]s many a curbstone philosopher has observed, everything is related to everything else." *Calif. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 843, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring). Consistent with the comprehensive nature of ERISA, the preemption language has been read broad-

ly. *Manning v. Hayes,* 212 F.3d 866, 870 (5th Cir.2000) (characterizing the scope of ERISA's preemption provisions as "deliberately expansive"), *cert. denied,* —— U.S. ——, 121 S.Ct. 1401, 149 L.Ed.2d 345 (2001). A state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). *But see Boggs,* 117 S.Ct. at 1760–1761 (finding that state law conflict with statute's provisions or objects was sufficient to resolve preemption question in favor of ERISA without resort to interpretation of statutory language). Execution of judgment statutes, such as those here, are generally applicable and would not refer specifically to ERISA. The Court will analyze whether the statutes conflict with ERISA, frustrate its objectives, or have an impermissible "connection with" ERISA plans.

One case that dealt with ERISA preemption and execution of judgments is *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). In *Mackey,* the Supreme Court, in analyzing Georgia's general garnishment statute, held that ERISA does not bar a garnishment action against a welfare benefit plan. *Id.* at 826, 108 S.Ct. 2182. The benefit plan at issue here is a pension benefit plan, which distinguishes it from *Mackey.* The court specifically noted that ERISA does not provide an enforcement mechanism for collecting judgments against welfare benefit plans, which distinguishes *Mackey* from the case before this Court. Without looking to state law, there would be no effective process to collect on a successful suit for benefits by a participant or on an action where a welfare benefit plan had failed to pay its creditors. *Id.* at 2187. In the context of alienation of pension benefits, by contrast, ERISA has provided the QDRO mechanism to effectuate judg-

ments. Importantly, *Mackey* involved ERISA welfare benefits which, through Congressional silence on the issue, are subject to alienation or garnishment, *id.* at 2189, whereas Luciano Compagnoni's benefits are ERISA pension benefits, which can only be alienated by a QDRO. The effect of any lien with respect to federal law governing the collection of debts owed the United States is a federal question. *United States v. Acri,* 348 U.S. 211, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955). For this reason, "although a state court's classification of a lien as specific and perfected is entitled to weight, it is entitled to reexamination" by federal courts. *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 83 S.Ct. 1651, 1655 n. 7, 10 L.Ed.2d 770 (1963).

As mentioned earlier, imposing state law perfection requirements upon judgment creditors attempting to make use of the superpriority provisions of 26 U.S.C. § 6323(a) would create choice of law difficulties as well as enormous practical confusion where the company, plan trustee, and plan participant are located in different states, as here. In order to determine whether the IRS or a former spouse is entitled to benefits, a plan administrator would have to master execution procedures of fifty states as well as apply choice of law principles where applicable. One of the primary purposes of ERISA and for providing for pervasive federal preemption is to ensure uniformity of administration to protect participants and beneficiaries from the threat of conflicting and inconsistent state regulation. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987). Reading the Treasury Regulations to require a separate mechanism for perfection of a lien on pension benefits that varies from state to state would frustrate this objective.

The Supreme Court recently decided a related preemption issue, the logical underpinnings of which are instructive here. In *Egelhoff v. Egelhoff,* the court held that ERISA preempted a Washington statute that purported to automatically revoke a spouse's designation as beneficiary upon divorce. 532 U.S. 141, 121 S.Ct. 1322, 1325–1326, 149 L.Ed.2d 264 (2001). The court reasoned that the statute undermined uniformity, noting that "[p]lan administrators cannot make payments simply by identifying the beneficiary specified by the plan documents. Instead they must familiarize themselves with state statutes so that they can determine whether the named beneficiary's status has been 'revoked' by operation of law. And in this context the burden is exacerbated by the choice-of-law problems that may confront an administrator when the employer is located in one State, the plan participant lives in another, and the participant's former spouse lives in a third. In such a situation, administrators might find that plan payments are subject to conflicting legal obligations." *Id.* at 1328. The court also remarked that the administrative delay and uncertainty would create financial burdens that would ultimately be borne by beneficiaries. *Id.* at 1329.

The concerns raised in *Egelhoff* are relevant in this case. ERISA directs plan administrators to "establish reasonable procedures to determine the qualified status of domestic relations orders[.]" 29 U.S.C. § 1056(d)(3)(G)(ii). The uniformity of the QDRO procedures would be eliminated if plan administrators were then required to look from state to state to determine whether the lien was perfected. Such would be the case if, as the IRS suggests, the issuance of the QDRO is insufficient to establish the judgment lien creditor's priority. Here, the IRS would require Compagnoni to obtain a writ of execution on the Dade County court judg-

ment before she could be considered a "judgment lien creditor" with superpriority. The IRS does not specify which state's law Compagnoni would have to follow in order to perfect her judgment, and for good reason. It is not even apparent which entity Compagnoni would levy to perfect the judgment, assuming that levy is the appropriate method of execution. The IRS argues that it does not matter whether Florida, Texas or New York law applies, or, presumably, whether Compagnoni would proceed against her ex-spouse, his former employer, or the plan trustee to perfect her interest. The IRS claims that in this case, how Compagnoni would perfect her interest would be irrelevant because she took no action to perfect her interest beyond obtaining a QDRO.

The IRS's argument assumes that state law requires such additional measures in the first place. Because ERISA has spoken to how pension benefits are alienated, the Court interprets the Treasury Regulation language (requiring levy or seizure "if such action is required under state law to perfect the lien") as not mandating additional state law-based procedures to attain perfection. Should the language be construed as requiring further action on Compagnoni's part beyond issuance of the QDRO, such a requirement would be preempted by ERISA as it significantly interferes with the uniform administration of disbursing benefits and conflicts with the provision granting the plan administrator responsibility for determining whether a DRO is a QDRO. While a state's characterization of a lien as perfected is entitled to significant weight, *Pioneer Am. Ins. Co.*, 83 S.Ct. at 1655 n. 7, this classification cannot modify a federal statute where reliance on state law would wreak havoc with the administration of pension plans nationwide.

■ Additionally, the entire perfection and priority analysis, however, presumes that the benefits were Luciano Compagnoni's to relinquish to the IRS in the first place. This issue was not addressed by the parties. It is a question of the extent to which Compagnoni had a property interest in his pension benefits at the time the Government imposed its lien. The imposition of a tax lien is limited to the actual property interest of the taxpayer. *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 2141, 76 L.Ed.2d 236 (1983); *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). In federal taxation cases, the definition of the underlying property interests is left to state law, but the consequences that attach to those interests are determined by reference to federal law. *Rodgers*, 103 S.Ct. at 2137. When the IRS imposed its lien for the 1987 tax liability, on March 8, 1993, the divorce case was on remand from the appellate court. The final judgment was not issued until a month later. When the IRS issued its notice of lien on May 22, 1993, the final judgment had been entered and the first domestic relations order had been issued. By the time the IRS imposed its lien, Jacqueline Compagnoni had a possessory interest in the pension benefits and they were no longer Luciano Compagnoni's to turn over to the IRS. *See In re Gendreau*, 122 F.3d 815, 818 (9th Cir.1997) (finding that the state court order in divorce created the wife's interest in the husband's pension plan and correspondingly limited the husband's interest).

The QDRO provisions of ERISA do not suggest that the alternate payee has no interest in the plan until a QDRO is entered, " 'they merely prevent her from enforcing that interest until the QDRO is obtained.' " *Trs. of Dirs. Guild of Am. Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 421 (9th Cir.2000) (quoting

*Gendreau,* 122 F.3d at 819). *See also Stewart v. Thorpe Holding Co.,* 207 F.3d 1143, 1156 (9th Cir.2000) (holding that securing a DRO that creates an interest in the proceeds of a pension plan gives the bearer "the right to obtain a proper QDRO"). In *Tise,* the Ninth Circuit enforced an alternate payee's claim to benefits even though a QDRO was not entered until 1996, a year after the participant's death, and the participant had designated a different beneficiary. *Tise,* 234 F.3d at 426. In part because the state court had determined that the alternate payee was entitled to child support benefits and issued an order *nunc pro tunc* to 1991, the *Tise* court found that the alternate payee had an interest in the benefits that predated the participant's death. *Id.* at 421.

An analogy can be made to the case before the Court. The Florida state court created Jacqueline Compagnoni's interest in the pension benefits and as a result, limited Luciano Compagnoni's interest at the time of the divorce decree on April 8, 1993. *See Gendreau,* 122 F.3d at 818. Because the interest of the IRS in the benefits extends only as far as the taxpayer's, the interest of the IRS in the benefits was diminished as well. That Cooper determined that the first order did not meet the statutory requirements for a QDRO did not work to limit Jacqueline Compagnoni's interest in the benefits. The divorce decree and first payment order, even though inadequate under ERISA, permitted Jacqueline Compagnoni to claim an interest in the benefits, but one that could only be enforced by obtaining a QDRO.[4] *See Tise,* 234 F.3d at 421.

## V.

Whether the competing interests in Luciano Compagnoni's pension benefits are viewed from the vantage point of Ms. Compagnoni or the IRS, Ms. Compagnoni has the priority interest. The identity of the lienor, the property subject to the lien, and the amount of the lien was established as of the Dade County court's final judgment on April 8, 1993. While the IRS had assessed a tax liability a month earlier, its lien was not effective against Ms. Compagnoni as a judgment lien creditor, which she was as of the entry of the first DRO on April 16, 1993. *See* 26 U.S.C. § 6323(a); 26 C.F.R. § 301.6323(h)–1(g). While the Treasury Regulations specify that a judgment lien creditor must execute a judgment involving a lien on personal property where state law requires such action, ERISA, through the QDRO provisions, has specified its own mechanism for transferring benefits to an alternate payee, obviating the need for an additional state law procedure. Even if the Treasury Regulation is read to require compliance with state law, ERISA's QDRO procedure would supersede state execution procedures because forcing plan administrators to determine priority according to the laws of various states would run contrary to ERISA's goal of national uniformity and would present monumental administrative difficulties. *See Egelhoff,* 121 S.Ct. at 1328 (finding that ERISA preempted state statute in part because of administrative burdens and potential conflicting legal obligations it created). Accordingly, Compagnoni's compliance with

---

4. The QDRO procedures set forth in statute anticipate some time lag before a QDRO is attained. The Internal Revenue Code and ERISA require that during the time that the plan administrator is determining whether a DRO is "qualified," the administrator segregate the amount that would be payable to the alternate payee. 26 U.S.C. § 414(p)(7)(A); 29 U.S.C. § 1056(d)(3)(H). The plan administrator has a reasonable amount of time to make the determination. 26 U.S.C. § 414(p)(6)(A)(ii); 29 U.S.C. § 1056(d)(3)(G)(i)(II).

Cooper's and ERISA's QDRO requirements was sufficient to render her a judgment lien creditor with an interest superior to that of the Government. While the QDRO in its final form was not issued until July 20, 1993, which was after the IRS filed its notice of levy on May 21, 1993, Compagnoni's interest was conveyed as of the first DRO on April 16, 1993. *See Tise,* 234 F.3d at 421. The July order only clarified the earlier order and did not alter the substance of the order. The same conclusion is reached by analyzing the property interest Luciano Compagnoni had in the benefits.

The IRS stands in the shoes of the taxpayer as far as the scope of its property interest. *Rodgers,* 103 S.Ct. at 2141. In other words, the IRS cannot levy what the taxpayer does not own. Therefore, the IRS is limited to Luciano Compagnoni's interest in the pension benefits. As of the first DRO on April 16, 1993, Coopers was required by federal statute to segregate the money that Ms. Compagnoni would be entitled to once the QDRO could be entered. While Ms. Compagnoni could not enforce her interest in the benefits, securing a DRO, however imperfect, served to limit Mr. Compagnoni's interest in the benefits. Because the interest of the IRS extends only as far as that of Mr. Compagnoni, the IRS's interest in the pension benefits was similarly limited. *See Gendreau,* 122 F.3d at 818. The IRS did not have an interest superior to that of Ms. Compagnoni. Accordingly, the Government's motion for summary judgment is **DENIED.**

While Compagnoni did not file a motion for summary judgment, the Court has the power to enter summary judgment *sua sponte* where the losing party is on notice that it must produce all evidence in support of its position. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If a party moves for summary judgment, a court may grant summary judgment to the non-moving party on its own initiative if all the safeguards of Rule 56 are followed. *McCarty v. United States,* 929 F.2d 1085, 1088 (5th Cir. 1991). Here, the Government was on notice that it should submit all evidence required to support its position. It has submitted evidence related to the dates of assessments, notices and levies, which supplements the orders from the Florida court and the correspondence provided by Compagnoni. The Court conducted a hearing to discover relevant facts and the parties submitted additional briefing and evidence. Additionally, because the parties agree on the relevant facts of this case, but dispute the legal conclusions, summary judgment is proper. *See Thomas,* 975 F.2d at 235 (requiring evidence supporting a fact issue to avoid summary judgment). The procedural safeguards of Rule 56 have been followed and there are no material facts at issue that would justify a trial in this case. Consequently, the Court finds that Compagnoni is entitled to summary judgment and to the funds Cooper has deposited with the Court Registry.

## VI.

The Court has discretion to award reasonable attorney's fees in an interpleader action, provided that the stakeholder is disinterested. *Rhoades v. Casey,* 196 F.3d 592, 603 (5th Cir.1999). Because Cooper is not in controversy with either of the claimants in this case, Cooper is **ORDERED** to submit an application for attorney's fees, complete with an affidavit detailing counsel's work in this matter, within ten (10) days of the date of this order. Any response to Cooper's application must be filed within five (5) days of the date the application is filed.