CHOY, Circuit Judge:
Appellant William O. Gendreau (“William”) appeals the grant of summary judgment in favor of appellee Colleen R. Gendreau (“Colleen”) by the United States Bankruptcy Court and the subsequent affirmance by the Bankruptcy Appellate Panel (“BAP”) of the Ninth Circuit.
FACTUAL AND PROCEDURAL BACKGROUND
William and Colleen were married in 1985. In 1992 they were divorced. The Family Court for Loudoun County, Virginia, issued a divorce decree, awarding Colleen a fifty percent interest in amounts William accrued in his two United Pilot’s pension plans during the years they were married. The Family Court did not award either party maintenance or spousal support.
In January, 1993, the Family Court entered an order entitled “Qualified Domestic Relations Order” (“QDRO”), which was intended to satisfy an exception to the Employee Retirement Income Security Act’s (“ERISA”) prohibition against the alienation of pension plan funds. The order directed the plans’ administrator to pay Colleen directly her percentage of the pension funds. On May 17, 1993, the administrator determined that the payment order did not meet the specific criteria of a QDRO and refused to pay out funds to Colleen until he received an amended payment order that was approved as a QDRO.
On November 15, 1993, William filed a petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 701, et. seq. On November 29, William filed suit seeking a declaratory judgment that Colleen’s award of part of his pension plans benefits was a dischargeable debt. Both parties filed motions for summary judgment. After a hearing on the matter, the bankruptcy judge entered an order denying William’s motion and granting Colleen’s. William appealed the grant of summary judgment in favor of Colleen. The BAP affirmed, finding that there was no claim against the debtor, William, to be discharged in bankruptcy. In re Gendreau, 191 B.R. 798 (9th Cir. BAP 1995).
William timely filed an appeal in this court. Having reviewed the bankruptcy court’s conclusions of law de novo, see In re Alsberg, 68 F.3d 312, 314 (9th Cir.1995), cert. denied, U.S. -, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996), and its findings of fact for clear error, see id., we affirm.
DISCUSSION
At issue is whether William’s bankruptcy petition cut off any rights Colleen may have in a portion of William’s pension proceeds that were awarded to her in the divorce. ERISA was promulgated to protect participants in private employee benefit plans. 29 U.S.C. § 1001. ERISA strictly prohibits the assignment or alienation of pension benefits. 29 U.S.C. § 1056(d)(1); see also Patterson v. Shumate, 504 U.S. 753, 760, 112 S.Ct. 2242, 2247-48, 119 L.Ed.2d 519 (1992); Guidry v. Sheet Metal Workers Nat’l Pension Fund, 493 U.S. 365, 372, 110 S.Ct. 680, 685, 107 L.Ed.2d 782 (1990). However, Congress expressly excepted QDROs from ERISA’s anti-alienation rule. 29 U.S.C. § 1056(d)(3)(A). Domestic relations orders must meet specific requirements in order to qualify as QDROs. See 29 U.S.C. § 1056(d)(3)(B).
The QDRO exception was enacted to protect the financial security of divorcees. Ablamis v. Roper, 937 F.2d 1450, 1453 (9th Cir.1991). Because Congress was also concerned with reducing the expense to plan providers and protecting them from suits for making improper payments, it required that QDROs be specific and clear and allowed plan administrators to approve the QDRO before they would be required to act in accordance with it. Metropolitan Life Ins. Co. *818 v. Wheaton, 42 F.3d 1080, 1084 (7th Cir.1994); 29 U.S.C. § 1056(d)(3)(G).
William asserts that ERISA’s strict anti-alienation rules preclude Colleen from having a property interest in his pension plans absent a QDRO, which according to the plan administrator she does not have. Accordingly, he argues, Colleen merely has a right to obtain a QDRO and payment, which fits the bankruptcy code’s definition of debt. Colleen concedes that the plan administrator was within his rights to determine that the state court order did not qualify as a QDRO, but maintains that she has a nondischargeable interest in a portion of the pension proceeds.
The Bankruptcy Code provides for the discharge of all debts that are the personal liability of the debtor and that arose before the debtor filed for bankruptcy under title 11. 11 U.S.C. §§ 524 and 727(a). Debt is defined as a “liability on a claim,” 11 U.S.C. § 101(12), and claim is broadly defined to include a “right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.” 11 U.S.C. § 101(5). Debts incurred as a result of divorce, including property settlement debts,[1] are dischargeable except to the extent they represent obligations in the nature of alimony, maintenance, or support. 11 U.S.C. § 523. The award of a portion of pension benefits may constitute a property settlement that will be discharged in bankruptcy if it is determined to be a debt.
We find that Colleen’s interest is not a dischargeable debt. Firstly, we agree with the BAP that Colleen’s claim is against the United Pilot’s pension plans and not against William. . See Gendreau, 191 B.R. at 802. Therefore, the claim is not a personal liability of William that could be discharged by his bankruptcy.
The order required United to pay directly to Colleen her share of the proceeds and instructed the plan administrator to separately account for the portion awarded to Colleen until the benefits are distributed and provided that the “benefits awarded by this Order shall not be assigned, pledged, or otherwise transferred, voluntarily or involuntarily, before [Colleen] has received those benefits.” Also, ERISA provides that “[d]uring any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise), the plan administrator shall segregate in a separate account in the plan or in an escrow account the amounts which would have been payable to the alternate payee [Colleen] during such period....” 29 U.S.C. § 1056(d)(3)(H)(i) (emphasis added).
If the plans failed to pay Colleen, her recourse would be to sue the plans, not William. See id. at 802 (“To obtain the pension funds, [Colleen] would file a civil court action against the administrator. [Colleen’s] claim is against United, not the Debtor.”) In no way can William be personally liable to Colleen for this money, so it cannot be a personal debt of William’s that is dischargeable in bankruptcy. Even if Colleen did not have a QDRO at the time William filed for bankruptcy, his bankruptcy cannot ehminate her right to obtain a QDRO and seek payment from a different party.
Likewise, we agree with the BAP that the order by the Family Court, if not itself a proper QDRO, at least gave Colleen a right to obtain a proper QDRO that could not be discharged in William’s bankruptcy proceeding. Colleen’s interest in the pension plans (or, at a minimum, her right to obtain a QDRO which would in turn give her an interest in the plans) was established under state law at the time of the divorce decree. See id. at 803. William’s interest in the plans was limited at that time, or at least subject to being limited at any time Colleen obtained a QDRO (much like a current property owner’s rights may be subject to divestment by a contingent interest). See id. at 802-03. *819 Bankruptcy recognizes state property rights, and filing bankruptcy cannot give a debtor a greater interest in an asset than that which he owned pre-bankruptcy. Id. at 802. Whether or not Colleen’s domestic relations order, as issued, was a QDRO is irrelevant: The QDRO provisions of ERISA do not suggest that Colleen has no interest in the plans until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained. See id. at 804 n. 4. William did not file bankruptcy before Colleen had an interest in the plans — he filed bankruptcy before the plan administrator was authorized under ERISA to pay her according to that interest. As such, Colleen does not have an unmatured “debt” against William that is dischargeable in bankruptcy; rather, Colleen has a claim to her own interest in the plans that will be enforceable when the domestic relations order is approved as a QDRO.
Finally, allowing William to cut off Colleen’s interest in the pension plans because of the timing of his bankruptcy petition would be contrary to both ERISA and bankruptcy purposes. William filed his petition after the plan administrator concluded the order did not qualify as a QDRO but before it was modified for compliance. The Family Court retained jurisdiction to make any changes that might be deemed necessary by the plan administrator. Likewise, the plan administrator anticipated that it may require multiple drafts of the order to meet QDRO specifications as is evident in his letter to Colleen offering “to review the draft revised QDRO before it is entered by the court, ... [and to] given any comments [he] may have.” Finally, ERISA itself accommodates for periods when the status of a QDRO is at issue. See 29 U.S.C. § 1056(d)(3)(H)(i).
As noted above, the purpose of the QDRO exception was to protect the financial security of divorcees. This protection would be meaningless if William could thwart his spouse’s interest by filing bankruptcy before she obtained a QDRO, a process which everyone (including Congress) recognizes as time-consuming. Furthermore, the result would be a windfall to William and would not further bankruptcy’s goal of accumulating a pool of assets to be distributed among creditors. William exempted his interest in the pension plan from the bankruptcy estate. Thus, discharging Colleen’s interest in the plans would not enlarge the pool of assets available to William’s creditors, it would only enlarge his personal wealth.
CONCLUSION
ERISA section 1056 permits a state court to apportion pension proceeds pursuant to state domestic relations laws so long as the order complies with the section’s QDRO requirements. Whether Colleen had acquired a QDRO at the time of William’s bankruptcy, however, is irrelevant for the purposes of this appeal. Colleen does not have a personal claim against William that could be discharged by his bankruptcy — her rights are against United. Furthermore, William’s rights to United’s pension plans were limited, or subject to limitation by Colleen, at the time of the divorce decree and he cannot use bankruptcy to obtain a greater interest in an asset than that which he possessed prior to bankruptcy. Finally, to allow William to cut off Colleen’s right to obtain a QDRO based on the timing of his bankruptcy petition would subvert Congress’ efforts to safeguard the financial interests of plan participants’ spouses and protect plan administrators from inconsistent claims on pension proceeds, without furthering bankruptcy’s goal of preserving a pool of assets to be divided among the debtor’s creditors. Accordingly, we hold that Colleen’s claim against the pension plan for a portion of the benefits is not discharged by William’s bankruptcy petition.
AFFIRMED.

. The 1994 Amendments to the Bankruptcy Code included a change to section 523 making property settlement debts incurred in divorce proceedings nondischargeable. 11 U.S.C. § 523(a)(15). Because William filed his petition before the effective date of the amendments, it is not applicable to this case.