# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-2874/3872

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Francis Taylor, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Mary E. Taylor, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 14, 2003
Filed: July 31, 2003

_____

Before LOKEN, BYE, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

This case arises out of an April 1996 Northwest Airlines (Northwest) interpleader of the United States and Mary Taylor (Mary) to determine whether the Internal Revenue Service (IRS) or Mary has priority and is entitled to the benefits of three Northwest sponsored employee benefits plans. On cross motions for summary judgment, the district court ruled generally for the IRS and against Mary, finding

Mary's right to the plans under a Texas domestic relations order (DRO) was subject to a prior federal tax lien. We disagree and reverse.

## I.    BACKGROUND

As is often the case, the sequence of events is critical. Francis Taylor (Francis) worked as a pilot for Northwest from 1966 to 1994. During his employment, Francis participated in a retirement plan, a stock plan, and a savings plan administered by Northwest under ERISA.[1] Francis retired from Northwest in September 1994, at which time he filed in a Texas state court for divorce from Mary, his wife of more than thirty years. The following month, in October 1994, a tax court concluded that Francis had not filed tax returns from 1981 through 1985. On May 1, 1995, the IRS assessed deficiencies totaling approximately $984,310 (including penalties and interest) for those tax years. On July 28, 1995, the Texas court entered a divorce decree and approved a marital settlement agreement. The agreement provided that "to settle all obligations of the marriage," Mary would receive a 90 percent interest in Francis's Northwest employee benefits proceeds (plan proceeds). Also in July, the court entered a purported qualified domestic relations order (QDRO), directing the plan administrator to distribute Mary's interest in the plan proceeds directly to her. The Texas court, in the July order, retained jurisdiction to amend or reform the order as necessary to conform with plan requirements and qualify as a QDRO.

In October 1995, Northwest informed Mary and Francis that the July DRO did not qualify as a QDRO. In December 1995, the IRS filed a lien against the plan proceeds in Texas, where Francis claimed he resided at the time of the divorce, and where the DRO issued. In October 1996, the IRS filed another lien in Minnesota, where the plans were administered. Meanwhile, Mary and Francis attempted to

---

[1]Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1001-1461 (2000).

correct the DRO's identified deficiencies.  Among other things, the order:  (1)  did not specify the period to which it applied; (2) did not address how to treat amounts accrued, but had not yet been credited to the account; and (3) would have required Northwest to make an extra payment.  Twice the Texas court, at Mary's request, reformed the DRO to address Northwest's concerns.  Northwest finally pronounced the DRO a QDRO in January 1997.

The district court dismissed Northwest from the interpleader action, and the IRS and Mary were left to determine who was entitled to the plan proceeds.  The IRS claimed its interest in the plan proceeds was first in time, while Mary argued her interest had priority because she was both a "judgment lien creditor" and a "purchaser" under 26 U.S.C. § 6323(a),[2] a statute that in certain situations requires the IRS to file notice of its lien to obtain priority.

The district court concluded Mary was neither a purchaser nor a judgment lien creditor under section 6323(a).  Specifically, the court determined Mary was not a purchaser because her consideration was not "adequate and full," as defined in 26 C.F.R. § 301.6323(h)-1(f)(3) (2001) (consideration must have reasonable relationship to true value of interest in acquired property).  Further, the district court found Mary was not a judgment lien creditor because there was no evidence she had perfected her lien by executing the judgment as required under Texas law.  Because Mary was not entitled to the protections of section 6323, the district court held the IRS tax liens assessed on May 1, 1995, became effective against Mary as of that date and were first in time and entitled to priority.

---

[2]26 U.S.C. § 6323(a) states:  "Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.  The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary [of the Treasury]."

On appeal, Mary argues: (1) the Texas divorce court had exclusive jurisdiction over this dispute; thus, there was no federal question and the interpleader action was not proper; (2) under Texas community property law, Mary had substantial property rights in the plan proceeds even before the divorce; (3) she was a purchaser under section 6323(a); and (4) she was a judgment lien creditor under section 6323(a).

## II.    DISCUSSION

This court reviews de novo the district court's grant of summary judgment. Mayberry v. United States, 151 F.3d 855, 858 (8th Cir. 1998).  Initially, we reject Mary's first two arguments: (1) federal jurisdiction does exist, see 29 U.S.C. § 1132(a)(3) (civil action may be brought by fiduciary to enjoin violations of ERISA plan, or to obtain appropriate equitable relief); and (2) Texas community property law does not vest her with an interest in the plan proceeds.  See 29 U.S.C. § 1144(a) (ERISA supersedes state law insofar as such law relates to ERISA-governed plans); Boggs v. Boggs, 520 U.S. 833, 850 (1997) (QDRO provisions define scope of nonparticipant spouse's community property interest in pension plans).

We turn next to whether Mary became a judgment lien creditor under section 6323(a) within sufficient time to have priority over the IRS.[3]  An IRS lien attaches automatically on the date a penalty is assessed, 26 U.S.C. § 6322 (lien arises at time of assessment), and is enforceable as of that date against creditors except any "purchaser," "holder of security interest," "mechanic's lienor," or "judgment lien creditor," within the meaning of section 6323(a).  If the creditor falls into one of these

---

[3]The IRS has authority to proceed against Francis's interest in any ERISA plan benefits and "is not constrained by ERISA's anti-alienation provision." United States v. McIntyre, 222 F.3d 655, 660 (9th Cir. 2000).  After the DRO, Francis effectively no longer has any ownership interest in Mary's 90 percent share of the Northwest ERISA plans.

categories, then the IRS must provide adequate notice to establish the priority of its lien. See 26 U.S.C. § 6323(a); Rodeck v. United States, 697 F. Supp. 1508, 1511 (D. Minn. 1988) (as to § 6323(a) creditors, tax lien will have priority only if notice has been filed in accordance with § 6323(f)).

A Treasury Regulation defines "judgment lien creditor" as follows:

. . . a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established. Accordingly, a judgment lien does not include an attachment or garnishment lien until the lien has ripened into judgment, even though under local law the lien of the judgment relates back to an earlier date.

. . .

If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved.

26 C.F.R. § 301.6323(h)-1(g).

A state law created lien's priority depends on when it attaches and becomes choate, and federal law will determine when the lien has acquired sufficient substance and becomes so perfected as to defeat a later federal tax lien. United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 88 (1963). Liens are perfected, under the federal rule, when there is nothing more to be done to have a choate lien, that is, "when the identity of the lienowner, the property subject to the lien, and the amount of the lien are established." Id. at 89 (citations omitted). Here, Mary obtained a valid judgment

from a Texas divorce court for 90 percent of Francis's plan proceeds creating an exclusive property interest in the plan proceeds for Mary. On the date the Texas court granted the DRO, Mary's identity was clear, the subject property was identified, and the amount (90 percent) was fixed.

Mary was not required to comply with any state law requirements for purposes of establishing lien priority over the IRS's interest in the plan proceeds. ERISA provides a mechanism for enforcing QDROs, and this mechanism supersedes any contrary state law. See U.S. Constitution art. VI, cl. 2, Heart of Am. Grain Inspection Serv., Inc. v. Mo. Dep't of Agric., 123 F.3d 1098, 1103 (8th Cir. 1997) (under Supremacy Clause, federal laws are supreme law of land and may preempt state law); cf. Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984) (agencies may elucidate, through regulations, specific provisions of statutes that agencies administer). Specifically, 29 U.S.C. § 1056(d) provides for alienation of pension plan benefits in accordance with a QDRO, and gives plan administrators or courts eighteen months to determine whether a DRO qualifies as a QDRO, directing the plan administrator to segregate the amounts in question during that period. See 29 U.S.C. § 1056(d)(3)(H).[4]

In this case, Northwest determined, within eighteen months of the date the first payment would have been made under the DRO, that the DRO, as modified, was a QDRO. Thus, Mary satisfied ERISA's requirements for alienating pension plan proceeds. Requiring Mary to satisfy state law perfection requirements would conflict with ERISA's policy of ensuring that plan sponsors are subject to a uniform body of law. See Egelhoff v. Egelhoff, 532 U.S. 141, 148 (2001) (principal goal of ERISA

---

[4]Pension benefit plans are distinguishable from welfare benefit plans, which do not provide an enforcement mechanism. See Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 831-33 (1988); Cooper Indus., Inc. v. Compagnoni, 162 F. Supp. 2d 702, 709-10 (S.D. Tex. 2001).

is to establish uniform scheme with standard procedures; uniformity is impossible if plans are subject to different legal obligations in different states); Minnesota Chapter of Associated Builders & Contractors, Inc. v. Minn. Dep't of Pub. Safety, 267 F.3d 807, 810-11 (8th Cir. 2001) (ERISA's goal is to minimize administrative and financial burden of complying with conflicting state directives, and to prevent potential for conflicts in substantive law requiring tailoring of plans to peculiarities of multiple local laws), cert. denied, 122 S. Ct. 2292 (2002); Compagnoni, 162 F. Supp. 2d at 710 (imposing state law perfection requirements would create choice-of-law difficulties, frustrating objective of ensuring uniformity of ERISA administration).

We further conclude that Mary's interest in the plan proceeds relates back to the date of the initial DRO. See Nelson v. Ramette, 322 F.3d 541, 544 (8th Cir. 2003) ("A person awarded a lump-sum distribution from an ERISA plan pursuant to a divorce decree has a direct interest in plan funds while the plan reviews the DRO to determine whether it constitutes a QDRO."); Gendreau v. Gendreau, 122 F.3d 815, 818 (9th Cir. 1997) (wife's interest in pension plans was established at time of divorce decree; husband's interest was concomitantly limited at that time, or subject to being limited at any time wife obtained QDRO, much like property owner's rights may be subject to divestment by contingent interest); Compagnoni, 162 F. Supp. 2d at 711-12 (wife had possessory interest in benefits once first DRO had been entered although interest was unenforceable until QDRO was obtained); cf. 29 U.S.C. § 1056(d)(3)(H) (any determination made within eighteen months of the order, or modification of the order, will be applied prospectively). Mary had eighteen months pursuant to section 1056(d)(3)(H)(ii) to qualify her DRO, and "[i]f within the 18-month period . . . the order (or modification thereof) is determined to be a qualified domestic relations order, the plan administrator shall pay the segregated amounts . . . to the person . . . ." (Emphasis added). The plan administrator, by plan procedures, cannot shorten this eighteen month qualification period.

Because the DRO preceded the IRS's notice of tax lien, and Northwest determined within the requisite eighteen months that the DRO qualified as a QDRO, see 29 U.S.C. § 1056(d)(3)(H)(v) (computation of time), Mary was a judgment lien creditor with priority as of July 1995, when the DRO was entered. She is thus entitled to the plan proceeds free of the IRS lien.

One other related issue should be addressed regarding the finality of the July 1995 Texas DRO. The Texas judge signed an order prepared and approved by the parties which stated:

> The Court retains jurisdiction to amend this Order so that it will constitute a qualified domestic relations order under the Plan even though all other matters incident to this action or proceeding have been fully and finally adjudicated. If the Plan determines at any time that changes in the law, the administration of the Plan, or any other circumstances make it impossible to calculate the portion of a distribution awarded to Alternative Payee by this Order and so notifies the parties, either or both parties shall immediately petition the Court for reformation of this Order.

The intent of the July 1995 DRO, to qualify under the applicable Northwest plans, is clear. The parties and the court recognized the order may need changes to qualify. Northwest did require certain changes to qualify. Mary asked the Texas court twice to reform the DRO before Northwest accepted the DRO as a QDRO. This process is anticipated by the law, which provides for segregation of the funds by the plan administrator for up to eighteen months to qualify the DRO as a QDRO. See 29 U.S.C. § 1056(d)(3)(H). Our holdings in Nelson and here, recognizing the DRO establishes a "direct interest in plan funds," and upon qualification, the interest relates back to the initial DRO date, further the statutory scheme to protect employee retirement benefits for beneficiaries of the plans, including divorced spouses.

-8-

As a legal matter, when the DRO issued, Francis was no longer the owner of 90 percent of the Northwest ERISA plans. Mary was awarded this share as part of the divorce. Mary, the property, and the amount were identified clearly, only the details of qualification remained to transform the DRO into a QDRO.

## III. CONCLUSION

Since we conclude Mary was a judgment lien creditor, we do not address whether she was also a purchaser under section 6323(a). Accordingly, we reverse the summary judgment with regard to Mary Taylor, and remand with instructions to enter judgment in conformity with this opinion.

LOKEN, Circuit Judge, dissenting.

The lien priority issue in this case involves the interplay of two federal statutory regimes, ERISA and the Internal Revenue Code. The Code provides that a judgment lien, *when perfected*, has priority over an existing federal tax lien unless notice of the tax lien has been filed in accordance with state law. See 26 U.S.C. § 6323(a), (f). ERISA provides that a former spouse may acquire an enforceable right to a participant's pension plan benefits pursuant to the provisions of a "qualified domestic relations order" (QDRO).[5] Here, the IRS more or less concedes that the Texas divorce court's domestic relations order granted Mary Taylor a judgment lien on Francis Taylor's ERISA plan benefits. The issue, then, is whether her lien on those plan benefits is entitled to priority over the IRS's tax liens under § 6323(a).

---

[5]Significantly, the QDRO provisions of ERISA appear in both the Internal Revenue Code and the Title 29 labor laws. See 29 U.S.C. § 1056(d); 26 U.S.C. § 414(p). I will cite to the Code provisions in this dissent.

Federal law governs whether a judgment lien created by state law is perfected for purposes of § 6323(a). The federal rule is that a lien is perfected, or choate, "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 89 (1963) (quotation omitted). A Treasury Regulation now codifies this principle. 26 C.F.R. § 301.6323(h)-1(g). Though Mary Taylor's judgment lien was created by state law, ERISA provides that, to be perfected -- that is, enforceable against Francis Taylor's plan benefits -- the state court order must be a QDRO. And Congress's definition of a QDRO incorporates the substance of the federal law definition of a perfected lien: a domestic relations order qualifies as a QDRO if it clearly specifies the plan participant, the alternative payee (the lienholder), each plan to which the order applies, the amount or percentage of the benefits to be paid to the alternate payee, and the number of payments or period to which the order applies. 26 U.S.C. § 414(p)(2).

Given this overlap between the judicially developed federal rule of perfection, and the statutory elements of a QDRO, I agree with the court that a QDRO is a perfected judgment lien for purposes of the priority rules of § 6323(a). Like the court, I reject the IRS's argument that, to be perfected under § 6323(a), the judgment lien created by a QDRO must also satisfy any levy or seizure requirements generally applicable to liens created by the laws of that State. Congress codified the perfection requirements for a QDRO in another section of the Internal Revenue Code, and ERISA would preempt any local law that interfered with its anti-alienation provisions. In the absence of a Treasury Regulation specifically addressing the relationship between Code §§ 6323(a) and 414(p)(2), I decline to apply a general reference to local law in a pre-existing Treasury Regulation, 26 C.F.R. § 301.6323(h)-1(g), in a manner inconsistent with the QDRO perfection provisions of ERISA.

There remains the question whether Mary's judgment lien was perfected (acquired QDRO status) prior to the IRS filing notice of its tax liens in Dallas County,

-10-

Texas, in late December 1995. Mary's judgment lien arose on July 28, 1995, when the Texas divorce court entered a domestic relations order awarding her a 90% interest in Francis Taylor's ERISA plan benefits. Northwest Airlines as plan administrator determined that amended versions of that order qualified as QDROs, long after the tax liens were filed in December 1995. The court nonetheless concludes that Mary's QDRO-perfected lien has priority because "Mary's interest in the plan proceeds relates back to the date of the initial [divorce court order]." Ante at 7. I disagree.

ERISA provides that, when a domestic relations order is submitted for a QDRO determination, the plan administrator must make the determination "within a reasonable period after receipt of such order," 26 U.S.C. § 414(p)(6)(A)(ii), and must segregate plan benefits that would be payable to the alternate payee (here, Mary Taylor) for up to eighteen months while it makes that determination, § 414(p)(7). See Hogan v. Raytheon, Co., 302 F.3d 854, 857 (8th Cir. 2002). If the administrator determines within the eighteen-month approval period that the submitted order or a "modification" of that order is a QDRO, it must pay the segregated amounts to the alternate payee. 26 U.S.C. § 414(p)(7)(B); see Trustees of the Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise, 255 F.3d 661, 2000 U.S. App. LEXIS 38507, at **16 (9th Cir. 2000). In that situation, although the issue is not free from doubt, I do not take issue with the court's conclusion that QDRO status should "relate back" to the entry of the initial domestic relations order for purposes of § 6323(a) lien priority because ERISA has conferred a direct interest in the segregated plan funds at that earlier date.[6] Cf. Nelson v. Ramette, 322 F.3d 541, 544 (8th Cir. 2003) (for

---

[6]My doubt stems from the fact that the initial domestic relations order, if seriously deficient, may not satisfy the QDRO requirements in § 414(p)(2) that correspond to the elements that make a judgment lien choate under federal common law. Here, for example, the July 28, 1995, order did not identify to which of the three Northwest Airlines plans it applied and thus did not clearly define the 90% interest

-11-

bankruptcy purposes, alternative payee acquires QDRO interest in plan funds on the date the domestic relations order is first entered); Gendreau v. Gendreau, 122 F.3d 815, 818 (9th Cir. 1997) (same), cert. denied, 523 U.S. 1005 (1998).

But assuming the court has adopted a correct relation-back principle, it has misapplied that principle to the facts of this case. Unlike the plan administrator in Cooper Indus., Inc. v. Compagnoni, 162 F. Supp. 2d 702 (S.D. Tex. 2001), Northwest Airlines did not invite Mary and Francis Taylor to submit a modified domestic relations order to cure defects in the July 28, 1995, order. Rather, Northwest Airlines as plan administrator issued three letters between October 16 and November 3, 1995, initially determining that the July 28, 1995, domestic relations order did not qualify as a QDRO with respect to any of the three plans, and advising the Taylors that these initial determinations would become final at the conclusion of the sixty-day appeal period provided for in the three plans. When the Taylors did not appeal, Northwest Airlines issued three final *negative* determinations. At that point, ERISA expressly provides that Mary as alternate payee had no further interest in any segregated plan benefits. 26 U.S.C. § 414(p)(7)(C). Consistent with the statute, Northwest Airlines then paid the segregated benefits for the months from July 1995 to January 1996 *to Francis Taylor.* At that point, though the eighteen-month period had not expired, Mary's claim to a perfected judgment lien as of July 28, 1995, was finally rejected.[7]

_____

that Mary was awarded. In such a case, for purposes of priority against a federal tax lien, I am not sure whether QDRO status should only relate back to the date the deficient domestic relations order was modified, or all the way back to the entry of the initial, non-choate domestic relations order. I need not resolve that question here.

[7]The court has no support for its assertion that "[t]he plan administrator, by plan procedures, cannot shorten [the] eighteen month qualification period." Ante at 7. The assertion is contrary to the plain language of the statute, which requires a QDRO determination "within a reasonable period," provides that affected benefits

-12-

As the court notes, the Texas court entered a modified domestic relations order on January 8, 1996, after the plan administrator's final negative determinations. The Taylors submitted that order to Northwest Airlines as plan administrator. Northwest Airlines again issued three notices that it had received a domestic relations order (one notice for each plan), which is the first step in the QDRO-determination process. See 26 U.S.C. § 414(p)(6)(A)(i). In June 1996, Northwest Airlines finally determined that the January 8, 1996, order qualified as a QDRO with respect to Francis Taylor's savings plan and stock plan benefits. However, on April 15, 1996, Northwest Airlines initially determined that the January 8 order did not qualify as a QDRO with respect to Francis Taylor's retirement plan benefits. Again, the Taylors failed to appeal within the plan's sixty-day appeal period, and that determination became final. Again, after the appeal period expired, the Taylors submitted another modified domestic relations order, entered by the Texas court on August 29, 1996, which Northwest Airlines finally determined to be a QDRO on January 7, 1997.

On this undisputed record, I conclude that the plan administrator's QDRO determinations did not grant Mary Taylor a perfected judgment lien interest in Francis Taylor's plan benefits prior to January 8, 1996. As the IRS properly filed notice of its liens in late December 1995, the federal tax liens have priority over Mary's judgment lien under § 6323(a). Accordingly, I respectfully dissent.

must be segregated while the determination is made, but places an eighteen-month limit on the plan administrator's duty to segregate. The assertion is also contrary to the Department of Labor's interpretation of the QDRO provisions: "the '18-month period' during which a plan administrator must preserve the 'segregated' amounts . . . is not the measure of the reasonable period for determining the qualified status of an order and in most cases would be an unreasonably long period of time to take to review an order." U.S. Dep't of Labor, Employee Benefits Sec. Admin., QDROs -- The Division of Pensions Through Qualified Domestic Relations Orders, Question 2-12 at p.19, available online at <http://www.dol.gov/ebsa/Publications/qdros.html>.

A true copy.

Attest:

          CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.