**UNITED STATES of America,**
Plaintiff,

v.

**Wilson F. RIGLER, and Iowa**
**Department of Revenue,**
**Defendants.**

**No. 4:11–cv–00204–JEG.**

United States District Court,
S.D. Iowa,
Central Division.

Aug. 16, 2012.

Martin Morris Shoemaker, U.S. Dept. of Justice Civil Tax Division, Washington, DC for Plaintiff.

John M. Carter, Lead Attorney, Carter Law Firm, Carlsbad, CA, for Wilson F. Rigler.

Valencia V. McCown, AAG, Des Moines, IA, for Iowa Department of Revenue.

## ORDER

JAMES E. GRITZNER, Chief Judge.

This matter is before the Court on a Motion for Summary Judgment brought by Plaintiff United States of America (the Government), which Defendant Wilson F. Rigler (Rigler) resists. The parties have not requested a hearing, and the Court finds a hearing is not necessary in the resolution of this matter. The matter is fully submitted and ready for disposition.[1]

## I. BACKGROUND

### A. Parties

In this action, the Government seeks to reduce to judgment certain federal income tax assessments made against Rigler and to foreclose on federal tax liens on Rigler's real property. Based upon potential claims of interest in the real property that is subject to the tax liens, the United States also named as defendants Rigler's wife, Linda Rigler; Mithril Management, Inc., Trustee, (Mithril) of the Hazelnut Trail Holdings (the Trust); and the Iowa Department of Revenue. The Iowa Department of Revenue answered the complaint and acknowledged holding liens that were junior to the federal liens. The Iowa Department of Revenue indicates that it does not challenge the entry of a decree and will take no further part in this action.[2] Neither Linda Rigler nor Mithril answered the Complaint or otherwise appeared in this action. Default and Default Judgment were entered against Linda Rigler and Mithril extinguishing any rights, claims, or interests that are senior to the federal tax liens on the real property.

### B. Factual[3] and Procedural History
### 1. Rigler's Sources Of Income

Rigler is a physician and has been practicing medicine since 1969. In 1999, Rigler moved from Mountain Home, Arkansas, to Centerville, Iowa, and began working for Chariton Valley Medical Center. In 2000, Rigler sold his Arkansas home for approximately $111,000. From 2000 to 2001, Ri-

1. The pending motion was fully submitted on March 8, 2012, but the delay in the adjudication of this motion was due to an administrative issue regarding the ability of Defendant's attorney to practice in this Court. That collateral matter was resolved between the Court and Defendant's counsel on July 9, 2012.

2. The Iowa Department of Revenue requests that the Court's decree provide for any remaining proceeds to be distributed to junior lien holders in accordance with their lawful relative priority and that the Court send a file-stamped copy of the decree to the Iowa Department of Revenue.

3. In Rigler's Brief in Resistance to the Government's Motion for Summary Judgment, Rigler, aside from the general disclaimer that "[t]he Statement of 'undisputed material facts' as presented by the Plaintiff are [sic] actually disputed by the Defendant" and "is incorrect," Pl.'s Br. ¶¶ 11, 13, ECF No. 13, Rigler does not respond to the Government's Statement of Undisputed Facts. Local Rule 56(b) instructs that "[t]he failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact." Thus, Rigler having failed to comply with Local Rule 56(b) or to provide any adequate response to the Government's Statement of Undisputed Facts, the Court deems those facts admitted. *See Beard v. Banks,* 548 U.S. 521, 527, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (noting that "by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts," the plaintiff was "deemed to have admitted the validity of the facts contained in the [defendant]'s statement"); *Libel v. Adventure Lands of Am., Inc.,* 482 F.3d 1028, 1032 (8th Cir.2007) ("The district court was not obliged to scour the record looking for factual disputes. Therefore, the district court committed no abuse of discretion when it deemed admitted [the defendant]'s statements of undisputed facts where [the plaintiff]'s responses violated Local Rule 56.1 [now 56(b) ].").

gler contracted with Daniel & Yeager to work in various hospitals. From 2002 until 2006, Rigler worked for Iowa Health Physicians in Osceola, Iowa. Since 2006, Rigler has worked for EmCare© and ACUTE CARE© as an emergency room physician. In 2004, Rigler also earned income through trading stocks.

In 1999, despite knowing that his employers reported Rigler's income to the Internal Revenue Service (IRS) through submission of Forms 1099 and/or W–2, Rigler stopped filing federal income tax returns because he had come to a "different understanding of what tax liability was all about." Rigler Dep. 38:9–10, Pl.'s App. 52, 54, ECF No. 12–5. While Rigler acknowledged that the payments he received from his employers were for Rigler's services, he believed that those payments were "not due to any taxable activity or exercise, and so there's not a tax." Rigler Dep. 41:17–19, 43:4–44:10, Pl.'s App. 49, ECF No. 12–5. Rigler did not file federal income tax returns for the years 2000, 2001, 2003, or 2004. Rigler admits that in 2009, he prepared and submitted to the IRS documents purporting to be his 2006 and 2007 tax returns; each document reported zero taxable income. Attached to those documents were Forms 1099, 4852, and W–2 for tax years 2006 and 2007 that had been altered to show Rigler's income as zero. At the bottom of those forms was a statement signed by Rigler disclosing that the "corrected Form" was "submitted to rebut a document known to have been submitted by the party identified above as 'PAYER' which erroneously alleges a payment or payments to the party identified above as the 'RECIPIENT' of 'gains, profit or income', within the meaning of relevant law." Pl.'s App. 76, 77, 82, 83, 84, ECF No. 12–6. Rigler has not made a voluntary payment to IRS in ten years.

### 2. IRS Tax Assessments

Beginning on July 12, 2004, the IRS made assessments against Rigler for federal income taxes, interest, and penalties for the tax years 2000, 2001, 2003, 2004, 2006, and 2007 in the amounts of $3,609.20; $29,242.52; $79,947.78; $113,160.65; $5000; and $10,019.21, respectively. The IRS based the tax assessments on Forms 1099 and W–2 that had been submitted to the IRS by Rigler's employers, including Chariton Valley Medical Center, Daniel & Yeager, Mercy Medical Center, and Iowa Health Physicians. The assessments also included income in 2000 and 2004 from the sale of Rigler's Arkansas home and his stock trading activities and penalties assessed for filing frivolous tax returns in tax years 2006 and 2007. The total assessment was $240,979.36.

The IRS sent Rigler notices of the assessments and demands for payment. Rigler failed to pay over the amounts assessed against him; and as of January 31, 2012, including accruals, the amount Rigler owed was $315,713.49, with statutory interest continuing to accrue.

The IRS filed with the Recorder of Appanoose County, Iowa, the following tax liens:

| TAXPAYER | TAX PERIOD | DATE OF FILING |
| --- | --- | --- |
| Wilson F. Rigler | 2000 & 2001 (1040) | 02/02/06 |
| Hazelnut Trail Holdings, Mithril Management Inc., Trustee, transferee and/or nominee of Wilson F. Rigler | 2000 & 2001 (1040) | 08/13/07 |
| Mithril Management, Inc., Trustee, Hazelnut Trail Holdings, transferee and/or nominee of Wilson F. Rigler | 2000 & 2001 (1040) | 08/13/07 |

| | | |
|---|---|---|
| Wilson F. Rigler | 2003 & 2004 | (1040) |
| Wilson F. Rigler | 2006 & 2007 (penalties) | 11/02/09 |
| Hazelnut Trail Holdings, Mithril Management, Inc., Trustee, transferee and/or nominee of Wilson F. Rigler | 2003 & 2004 (1040)<br>2006 & 2007 (penalties) | 11/06/09 |
| Mithril Management, Inc., Trustee, Hazelnut Trail Holdings, transferee and/or nominee of Wilson F. Rigler | 2003 & 2004 (1040)<br>2006 & 2007 (penalties) | 11/06/09<br>11/06/09 |

Pl.'s App. 72–73, 115–127, ECF Nos. 12–5, 12–7.

The liens attached to real property, located at 14142 524th Street, Centerville, Iowa 52544 (the Centerville property). Defendant and Linda Rigler (collectively, the Riglers) have continuously lived on the Centerville property since 1999.

**3. Conveyances of the Centerville Property**

On April 1, 2004, Lila M. Frogge, Linda Rigler's mother, conveyed the Centerville property to the Riglers for consideration of approximately $65,000. The joint tenancy warranty deed was recorded with the Recorder of Appanoose County, Iowa, the same day.

On October 14, 2005, the Riglers transferred the property by warranty deed to "Mithril Management, Inc., Trustee, Hazelnut Trail Holdings." Rigler Dep. 15:15–16, App. 26, ECF No. 12–4. The warranty deed was recorded on November 2, 2005. The Appanoose County Recorder does not show that any real estate transfer tax was paid or that a declaration of value was filed pertaining to the property transfer from the Riglers to the Trust. The Riglers received no consideration in conveyance of the property to the Trust; Rigler described the conveyance as "an exchange of certificates." Rigler Dep. 22:22, Pl.'s App. 33, ECF No. 12–4; Pl.'s App. 33–34. The Trust was formed "shortly before" the Riglers conveyed the Centerville property to the Trust. Rigler Dep. 18:10, Pl.'s App. 29, ECF No. 12–4. However, the transfer from the Riglers to the Trust occurred after the IRS assessed Rigler's 2000 and 2001 federal income taxes and after Rigler's 2003 and 2004 taxes were due and owing.

At his deposition, Rigler described the Trust as a "pure trust that basically owns the [Centerville] property," which, according to Rigler, does not and cannot have a tax payer identification number because it is "a pure trust, not a government-established trust." Rigler Dep. 15:25–16:1, 20:22–23, Pl.'s App. 26–27, 31, ECF No. 12–4. Rigler denied any knowledge of Trust beneficiaries and could not recall how he learned about the trustee, Mithril. Rigler did acknowledge that he was the Trust's "managing director" and that as managing director of the Trust, he was entitled to all ownership benefits and obligations of the Centerville property. Rigler Dep. 23:24–24:3, Pl.'s App. 34–35, ECF No. 12–4. Rigler explained that he rents the property from the Trust for $1000 per month, which he pays in cash. Rigler further explained that he holds on to the rent cash on behalf of the Trust, which has no bank account. Since acquiring title to the Centerville property in 2004, Rigler has paid all expenses associated with property ownership, including the property taxes, utility bills, dust control expenses, and any home improvements. Rigler testified that he keeps the financial records associated with the Trust but would need permission from Mithril to release those records. Rigler failed to provide those records in response to the Government's Request for Production of Documents. Rigler also testified that he had a written rental agreement with Mi-

thril and/or the Trust but similarly failed to produce that agreement in response to the Government's Request for Production of Documents. In addition to retaining his own rent monies, Rigler collects and keeps rent monies from local farmers to whom Rigler leases portions of the Centerville property for harvesting hay.

On May 9, 2006, Rigler filed with the Appanoose County Recorder's Office a document signed by Mithril president Anthony Michaels entitled, "Public Notice of Debt Disclaimer of Hazelnut Trail Holdings a Trust Organization" (Debt Disclaimer), which purportedly gave notice to

> all persons, companies, corporations, associations, or organizations extending credit to, contracting with, or having claims against this Trust Organization for payment or settlement of any debts, damages, court order, judgment, tort claim, or decree, or for any indebtedness which may become payable hereunder; that the Trustee(s), officers, Managing Directors or agents are Independent Contractors and not personally liable when dealing with the Trust Organization properties or matters.

Pl.'s App. 67, ECF No. 12–5; App. 65–57. According to Rigler, the document meant that "[t]he trust ha[d] no obligation to anyone and there's no liability." Rigler's Dep. 54:17–18, Pl.'s App. 65, ECF No. 12–5. The Trust has no tax payer identification number, has never filed a tax return, and has never reported any rental income or any other income.

The Government filed this Motion for Summary Judgment asserting that, pursuant to 26 U.S.C. §§ 7402(a) and 7403, the Government is entitled to having the tax assessments made against Rigler reduced to a judgment; a determination that the federal tax liens attach to the Centerville property; foreclosure of the federal tax liens on the Centerville property; and a decree that the Centerville property be sold, and that the proceeds from the sale be distributed according to the relative priority of the liens and claims. In resistance, Rigler argues that the Government is not entitled to summary judgment because there are disputed material facts, Rigler's conduct was the result of a good faith mistaken belief in reliance upon case law concerning tax liability, and the Government acted in bad faith in alleging Rigler's position was frivolous because the Government did not follow established procedures.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores,* 638 F.3d 984, 993 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### B. Reducing the Tax Assessments to a Judgment

█ The Government asserts that pursuant to 26 U.S.C. § 7402(a), it is entitled to have the tax assessments made against Rigler reduced to a judgment. Section 7402(a) provides this Court the authority to reduce Rigler's tax assessments to judgment, stating, in pertinent part, that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction ... to render such judgments and decrees as may be necessary or

appropriate for the enforcement of the internal revenue laws."

In support of having the tax assessment against Rigler reduced to judgment, the Government submits the Declaration of IRS Officer Arnold Stevenson, who attests that he made tax assessments against Rigler for tax years 2000 to 2001, 2003 to 2004, and 2006 to 2007. Attached to Stevenson's Declaration are certified tax assessment transcripts for the respective tax years. Stevenson states that he made the tax assessments based upon information contained in Forms 1099 and W–2 submitted to the IRS by various Iowa medical facilities, including Chariton Valley Medical Center, Daniel & Yeager, Mercy Medical Center, and Iowa Health Physicians; income in 2000 from the sale of Rigler's Arkansas home; income in 2004 from Rigler's stock trading activity; and the penalties assessed against Rigler for filing frivolous documents purporting to be Rigler's 2006 and 2007 tax returns that erroneously reported Rigler's taxable income as zero.

In resistance to the Government's Motion for Summary Judgment, Rigler argues that the tax assessments "were not *necessarily* correct or proper" and that, in fact, the amounts of the assessments were incorrect because the IRS "fail[ed] to apply proper credits or account for the fact that [Rigler] filed his tax returns covering all of the tax periods related to the issues in this case." Def.'s Br. ¶¶ 8, 14, ECF No. 13 (emphasis added). Rigler asserts that the Government fails to mention that he has "never refused to pay any of the assessments against him" but merely "inquired to [sic] the [IRS] regarding the amount and basis of the taxes accessed," and the IRS failed to respond. *Id.* ¶ 15. Rigler adds that the Government "appears to have a [sic] improper motive based upon [Rigler]'s prior belief that his tax liability may not have been proper based upon his

learning his activity to acquire income may not have necessarily been taxable." *Id.* ¶ 10.

 "Tax assessments made by the IRS are presumed correct and the taxpayer bears the burden of proving, by a preponderance of the evidence, that the assessment is erroneous." *N.D. State Univ. v. United States,* 255 F.3d 599, 603 (8th Cir.2001) (citing *Boles Trucking, Inc. v. United States,* 77 F.3d 236, 239 (8th Cir. 1996) ("[The court] start[s] with the well-established principle that the Commissioner's determination of tax liability is entitled to a presumption of correctness and that the burden is on the taxpayer to prove that the determination is erroneous.")). Penalties assessed for failure to timely file tax returns are entitled to a presumption of correctness. *See, e.g., Boles,* 77 F.3d at 242 (rejecting taxpayer's cross-appeal challenging that the district court erred by allowing the penalties imposed in the tax assessment); *United States v. Brice,* No. 3:10–CV–5062–DGK, 2012 WL 1078191, at *4 (W.D.Mo. Mar. 30, 2012) (citing *Boles* and finding "[t]he penalties assessed against a taxpayer for failure to timely file his tax returns and pay his federal income taxes are also entitled to a presumption of validity").

In contesting the tax assessments, Rigler submits only his own affidavit and attests that "[s]ince first receiving presentments from numerous individuals of the [IRS]" he has "consistently responded by conditional acceptance" and "[e]very effort was made to respond to every presentment ... to stay in honor." Rigler Aff., ECF No. 13–1. Rigler further declares that "[i]n every case, [he] did not argue with the presentment/presenter about their presumptions, but asked for 'Proof of Claim' that the presenter and [IRS] were asserting." *Id.* Rigler requested that the IRS send him proof of claim that he "engaged

930

in any revenue taxable activity or revenue taxable privilege as defined in the Internal Revenue Code." *Id.* Rigler said that to each of these requests, he attached "an un-rebutted [sic] affidavit statement, such as 'Affiant has not seen or been presented with any evidence or material fact that Wilson Foster: Rigler has engaged in any revenue taxable activity or revenue taxable privilege as defined in the Internal Revenue Code, and believes that none exists.'"[4] *Id.* Rigler avers that "[a]t no time did [he] refuse to pay any type or category of tax but asked that any assessment was done properly, legally and lawfully," but that the IRS has "defaulted at every instance." *Id.* Rigler declares that "[n]otice to the agent is notice to the principal; notice to the principal is notice to the agent." *Id.* (internal quotation marks omitted). In conclusion, Rigler avers that he has "stated numerous times that upon proof of their ([IRS]) claim(s) that I owe a tax of any kind, I would pay such tax. To date, no proof has been provided." *Id.*

Rigler's assertions, taken in the light most favorable to him as nonmovant, do not rebut the presumption that the tax assessments are correct. In fact, Rigler admits that when he was presented with the assessments, he "did not argue with the presentment/presenter about their presumptions." *Id.* Further, Rigler does not deny that he failed to file income tax returns in 2000, 2001, 2003, or 2004, and that in tax years 2006 and 2007, he submitted to the IRS documents purporting to be tax returns that reported zero income. Rigler's arguments, instead, vacillate between excusing his conduct as "a mistaken belief based upon his reliance upon estab-

lished case law concerning tax liability" and renewing his prior assertions that "[t]he Sixteenth Amendment does not purport to confer power to levy income taxes in a generic sense, ... but its purpose is to relieve all income taxes when imposed from apportionment and from consideration of the source whence the income is derived." Def.'s Br. ¶ 24 (caption), ¶ 27, ECF No. 13 (citing *Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1, 18, 36 S.Ct. 236, 60 L.Ed. 493 (1916)).

Rigler's arguments that compensation for his services is not taxable income under the Sixteenth Amendment and that his belief in the unconstitutionality of such a tax is a defense for failing to file income tax returns have repeatedly been rejected by the Eighth Circuit. *See Funk v. Comm'r*, 687 F.2d 264, 265 (8th Cir.1982) (per curiam) ("It is not disputed that [the plaintiffs] failed to report as income wages received during the 1976 and 1977 taxable years. They argue that compensation for labor is not constitutionally subject to the federal income tax, that an individual's labor is capital in which he or she possesses a property right, that an individual has the right to exchange that property for other property, i.e. money, and that such a transaction is an equal exchange which does not give rise to any profit. We reject [the plaintiffs'] sixteenth amendment claim because the constitutionality of the sixteenth amendment was upheld by the Supreme Court in *Brushaber* ...."); *Broughton v. United States*, 632 F.2d 706, 707 (8th Cir.1980) (per curiam) ("The sixteenth amendment authorizes the imposition of an income tax without apportion-

**4.** Rigler's insertion of a colon before his last name is a noted device used by tax protestors. *See, e.g., United States v. Bradley*, Nos. 99-3765, 99-3767, 99-3769, 2001 WL 997428, at *1 (6th Cir. Aug. 9, 2001) (unpublished order) (noting that the tax protestor defendant "plays the 'name game,' contending that 'Ed-

gar Francis; Bradley' is a natural born man of the State of Ohio, while 'Edgar F. Bradley' is merely a corporate fiction"); *Audio Invs. v. Robertson*, 203 F.Supp.2d 555, 565 n. 2 (D.S.C.2002) ("The use of a hyphen or colon (the punctuation mark) in names is typical of tax-protester and militia groups.").

ment among the states. Income includes wages or compensation received for services performed, and taxpayer's contention is frivolous and totally devoid of merit." (internal citation omitted)); *Hayward v. Day*, 619 F.2d 716, 717 (8th Cir.1980) (per curiam) (rejecting the tax protestor's arguments that his failure to file an income tax return could not have been willful since he had no duty to file a return because "[a]n income tax on wages is illegal as a direct tax on the source of income," concluding the arguments were frivolous as "Congress clearly intended to tax income regardless of the source" and "[t]he fact that [the tax protestor]'s failure to file was motivated by his belief that the tax is unconstitutional is no defense").

Rigler's arguments do not rebut the tax assessments' presumption of correctness. *Long v. Comm'r*, 757 F.2d 957, 959 (8th Cir.1985) (per curiam) ("[I]n deficiency actions the Commissioner's determination is presumed correct, and the petitioner bears the burden to prove otherwise. Furthermore, the Commissioner is entitled to the benefit of that presumption in moving for summary judgment, and the presumption will permit judgment in the Commissioner's favor unless the opposing party produces substantial evidence overcoming it." (internal citations and quotation marks omitted)). The Court finds that pursuant to § 7402, the Government is entitled to have those assessments reduced to judgment against Rigler for the unpaid balance.

## C. Foreclosure of the Tax Liens on the Subject Property

■ The Government next asserts it is entitled to a decree foreclosing on the tax liens upon the Centerville property.

■ Section 7403(a) provides that [i]n any case where there has been a refusal or neglect to pay any tax, ... the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

Under 26 U.S.C. § 6321, "[i]f the taxpayer does not pay the amount assessed, then the amount automatically becomes a tax lien on all property belonging to the taxpayer, and the IRS may proceed with further collection actions." *Pagonis v. United States*, 575 F.3d 809, 812 (8th Cir.2009) (internal citation omitted). "[T]he lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied...." 26 U.S.C. § 6322; *see United States v. Taylor*, 338 F.3d 947, 950 (8th Cir.2003) ("An IRS lien attaches automatically on the date a penalty is assessed...."); *Superpumper, Inc. v. Nerland Oil, Inc. (In re Nerland Oil)*, 303 F.3d 911, 916 (8th Cir.2002) ("According to federal law, the priority of a lien depends on the time the lien attached to the property in question and became choate. A federal tax lien attaches and becomes choate at assessment." (internal citation and quotation marks omitted)).

■ Although under § 6322, "a federal tax lien's priority order is based upon the time when the lien is *assessed,* not when it is filed," *In re Nerland Oil*, 303 F.3d at 916, there is an exception to this rule. Title 26 U.S.C. § 6323(a) provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser ... until notice thereof ... has been filed by the Secretary." A purchaser for purposes of § 6323, is defined as "a person who, for

adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." § 6323(h)(6).

It is undisputed that Rigler became joint owner of the Centerville property on April 1, 2004, and remained owner of the Centerville property when the IRS made the tax assessments on July 12, 2004. Rigler purportedly transferred the Centerville property to the Trust on October 14, 2005, after the federal tax lien arose. The federal tax liens were not filed until February 2, 2006, and thus would not have priority over any interest held by the Trust if the Trust is a purchaser as defined in § 6323(h)(6).

### 1. Purchaser Under § 6323(h)(6)

The Appanoose County Recorder shows no payment of real estate transfer tax and no declaration of value filed pertaining to the property transfer from the Riglers to the Trust. The Riglers received no consideration for conveying the property to the Trust. As described by Rigler, the Trust was formed "shortly before" the conveyance of the Centerville property and the conveyance to the Trust was merely "an exchange of certificates." Rigler Dep. 18:10, 22:22, Pl.'s App. 29, 33, ECF No. 12–4.

Based upon the foregoing undisputed facts, the Court finds that the Trust did not pay adequate and full consideration for the Centerville property and was not a "purchaser" under § 6323(h).

### 2. Alter Ego Theory

 Additionally, under an alter ego theory, the Government is entitled to foreclose the federal tax liens on the Centerville property. As the Eighth Circuit has held,

[a] section 6321 lien extends beyond the taxpayer and reaches property in the hands of the taxpayer's alter ego or

nominee. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350–51, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). Thus, federal tax liens against a taxpayer may be foreclosed against property, even when the taxpayer is no longer the nominal property holder; for example, when title is held by a nominee or alter ego, or where the title has been fraudulently conveyed. In such instances, courts have ignored the fact that the property is in a third party's name and have upheld the IRS's right to pursue such property.

*Brice,* 2012 WL 1078191, at *4; *see United States v. Scherping,* 187 F.3d 796, 801 (8th Cir.1999) ("The government may collect the tax debts of a taxpayer from assets of the taxpayer's nominee, instrumentality, or alter ego. In determining the economic reality of a transaction, courts must analyze the substance of a transaction and are not restricted by its form. While taxpayers are permitted to reduce their tax burden by any lawful means available, they are not permitted to construct paper entities to avoid taxation when those entities are without economic substance."). An entity void of economic substance may be deemed a taxpayer's alter ego. *Scherping,* 187 F.3d at 801. " 'Alter ego' means 'other self'—where ... [an] entity acts like, or, for another to the extent that they may be considered identical. Property held in the name of an entity which is the alter ego of a taxpayer may be levied on to satisfy the tax liabilities of the taxpayer." *Id.* at 801–02 (internal citations and quotation marks omitted).

 Federal courts look to state law to make an alter ego determination. *Id.* at 802. In *Hinson v. United States,* 994 F.2d 843, 846 (8th Cir.1993) (per curiam table decision), the Eighth Circuit, applying Iowa law, noted that in determining whether an entity is a separate legal entity

or merely the taxpayer's alter ego, the court must consider the totality of the circumstances and focus on non-exclusive factors such as "the family relationship between the entity's officers and the taxpayer, the commingling of entity and personal funds and expenses, use of the entity's assets for personal purposes, transfer of valuable assets from the taxpayer to the entity for little or no consideration, and use of the entity for fraudulent purposes."

Considering the totality of the circumstances and these factors, the Court must conclude that the Trust is Rigler's alter ego. Examining Rigler's relationship to the Trust reveals that Rigler is in no way independent of the Trust. Rigler has sole influence over the Trust and its affairs and identifies himself as the Trust's "managing director" and the lone decision maker over the Trust's only holding, the Centerville property. Rigler cannot recall how or when he learned about Mithril, the Trustee, and denies knowing of any Trust beneficiaries.

The commingling and personal use factors similarly support the alter ego theory. Rigler admittedly commingles Trust funds with his personal funds and expenses. Although Rigler testified that he rents the Centerville property from the Trust for $1000 per month, he admitted that all the benefits and obligations of property ownership fall to him. Rigler also acknowledged that the Trust has no bank account and no tax payer identification number, so he keeps the rent money. From the same funds, Rigler pays the expenses associated with property ownership, such as the property taxes, road dust control expenses, and home improvements, as well as personal expenses such as the household utility bills. Rigler testified that he is the person that keeps the financial records associated with the Trust and that he had entered into a written rental agreement with the Trust. In response to the Government's

Request for Production of Documents, however, Rigler failed to produce those documents and records. In addition to keeping the money from his own rent payments, Rigler leases portions of the Centerville property to local farmers for harvesting hay; those lease payments are paid to Rigler, not to the Trust.

The manner in which the Centerville property was conveyed to the Trust is further evidence that the Trust is Rigler's alter ego. Rigler received no consideration when he transferred the Centerville property to the Trust. The County Recorder has no record of any real estate transfer tax or declaration of value relating to the property transfer. Furthermore, Rigler himself described the conveyance as merely "an exchange of certificates." Rigler Dep. 22:22, Pl.'s App. 33, ECF No. 12–4; Pl.'s App. 33–34.

Finally, the Trust formation and formalities suggest that the Trust and the transfer of the Centerville property thereto were for a fraudulent purpose. Under Iowa law, a transfer is fraudulent as to a creditor, if the debtor made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Iowa Code § 684.4(1). In considering whether the transfer was fraudulent, the Court may consider, inter alia, whether the transfer was to an insider, whether the debtor maintained possession or control of the property after the transfer, whether the transfer occurred shortly before or after a substantial debt was incurred, whether the transfer was disclosed or concealed, and whether reasonably adequate consideration was given for the transfer. Id. 684.4(2); In re Sherman, 67 F.3d 1348, 1353–54 (8th Cir.1995) (noting that while the presence of one of these factors or "badges of fraud" is insufficient to establish fraudulent intent, "the confluence of several can constitute conclusive evidence

**934**

of an actual intent to defraud ..." and finding five of the badges of fraud was sufficient to show fraudulent intent (citation and internal quotation marks omitted)). The Trust was formed after the IRS gave Rigler notice of the tax assessment for 2000 and 2001, and after Rigler's 2003 and 2004 were due and owing. The Trust has no tax payer identification number, has never filed a tax return, and has never reported any rental income or any other income. Once the Centerville property was transferred, Rigler attempted to shield the real property from liability by filing the frivolous "Debt Disclaimer" document, in an attempt to make the Trust judgment proof from Rigler's creditors. Rigler, not the Trust, exercises complete control over the Centerville property. Several badges of fraud are present demonstrating actual intent. *Id.* The Trust is "[a]n entity without economic substance" and therefore "may be deemed a taxpayer's alter ego." *Scherping*, 187 F.3d at 801. On this record the Trust is nothing more than a subterfuge used by Rigler to evade collection of taxes.

For the reasons stated, the Court finds the Trust was Rigler's alter ego and not a separate entity.

The Court concludes the Government has set forth sufficient evidence to demonstrate the liens at issue were correctly obtained and executed, and Defendant has failed to produce any evidence to refute the Government's evidence in this regard. The record fails to disclose any genuine issue of material fact exists regarding the federal tax liens against Rigler.

## III. CONCLUSION

The Court finds that Rigler has done nothing more than offer "speculation and conjecture," which "are insufficient to defeat summary judgment," *Bloom v. Metro Heart Group of St. Louis, Inc.,* 440 F.3d 1025, 1028 (8th Cir.2006); and therefore

the Government's Motion for Summary Judgment, ECF No. 12, must be **granted.**

For purposes of directing the Clerk to enter a final judgment in favor of Plaintiff United States and against Rigler for an amount certain, within ten (10) days from the date of this Order, the United States shall supplement the record providing the Court with a proposed decree which (1) specifies Rigler's tax liability as of the date of this Order; (2) includes the details from the warranty deed describing the real property located at 14142 524th Street, Centerville, Iowa 52544, referred to herein as "the Centerville property," which has the following legal description: The Southwest Quarter of the Northwest Quarter of Section 2, Township 68 North, Range 19 West of the 5th P.M. in Appanoose County, Iowa; (3) sets forth the proposed manner of foreclosing the liens on the Centerville property; (4) identifies any remaining outstanding liens on the Centerville property, detailing the priority of those interests, including but not limited to any liens held by the Iowa Department of Revenue; and (5) provides a detailed accounting of costs the United States believes it is entitled to as provided by law.

**IT IS SO ORDERED.**